OPINION
{¶ 1} Defendant-appellant, Nathaniel J. Hagwood, appeals from a judgment of the Franklin County Court of Common Pleas, pursuant to a jury verdict, finding defendant guilty of one count of burglary, in violation of R.C. 2911.12, for which defendant was sentenced to a term of six years in prison. On appeal, defendant assigns one error:
The defendant's conviction for burglary was not supported by sufficient evidence when the evidence failed to prove beyond a reasonable doubt that the defendant committed a trespass or that defendant knew that he was trespassing. further, defendant's conviction was against the manifest weight of the evidence.
Although the sufficiency and manifest weight of the evidence support defendant's conviction, we modify the conviction to conform to the trial court's instructions to the jury and remand the case for resentencing.
 {¶ 2} Pursuant to an indictment filed February 18, 2004, defendant was charged with two counts of burglary occurring on December 15, 2003 and December 18, 2003, respectively, each in violation of R.C. 2911.12. Each count alleged that defendant used force, stealth, or deception to trespass in the Ohio State University ("OSU") East Hospital, an occupied structure, or in a separately secured or separately occupied portion of it. The counts further alleged that at the time of the alleged trespass: (1) a person other than defendant or an accomplice was present, and (2) defendant had the purpose of committing a criminal offense in the hospital. The allegations constitute the offense of second-degree felony burglary as proscribed by R.C. 2911.12(A)(1), one of four bases of burglary set forth in the statute.
 {¶ 3} A jury trial was held on the charges against defendant; defendant did not present any evidence. In its verdict, the jury found defendant guilty of burglary in OSU East Hospital on December 18, 2003 as alleged in count two of the indictment, but found defendant not guilty of the December 15, 2003 burglary set forth in Count 1 of the indictment. Sentencing defendant on a second-degree felony burglary, the trial court imposed a term of six years of imprisonment. The trial court ordered defendant to serve the sentence consecutively to an 11-month prison term the court imposed in a separate case involving defendant's receipt of stolen property, a fifth-degree felony.
 {¶ 4} In his single assignment of error, defendant asserts his conviction for burglary is not supported by sufficient evidence and is against the manifest weight of the evidence.
 {¶ 5} Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency is a test of adequacy. Id. We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 {¶ 6} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. Conley, supra;Thompkins, at 387 (noting that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony"). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Reversals of convictions as being against the weight of the evidence are reserved for cases where the evidence weighs heavily in favor of defendant. State v.Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 7} A basic element of all forms or degrees of burglary proscribed by Ohio statutes is trespass in an occupied structure or in a person's permanent or temporary habitation. See R.C. 2911.11 (defining aggravated burglary) and R.C. 2911.12 (defining burglary). The acts constituting a criminal trespass are set forth in R.C. 2911.21, which provides, in relevant part, that "[n]o person, without privilege to do so, shall * * * [k]nowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, mode, or hours, when the offender knows the offender is in violation of any such restriction or is reckless in that regard."
 {¶ 8} Privilege, which the trespass statute provides is a defense to trespass, is defined as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C.2901.01(A)(12). It is no defense to criminal trespass that the premises involved was owned, controlled, or in the custody of a public agency. R.C. 2911.21(B).
 {¶ 9} Defendant asserts the evidence presented at trial is insufficient to establish the required element of trespass. Specifically, defendant contends he clearly had a privilege to enter the hospital; he further asserts the prosecution failed to establish either that defendant lost his privilege, or knew he was without privilege, to enter an employee locker room in the hospital that was a restricted area. Contrary to defendant's contentions, the record contains sufficient competent, credible evidence that, construed in a light most favorable to the prosecution, supports the jury's finding that defendant is guilty of committing burglary, including its trespass element, on December 18, 2003.
 {¶ 10} We first note that defense counsel repeatedly conceded in closing argument that defendant was guilty of criminal trespass on December 18, 2003 in entering, without privilege, an employee locker room in the hospital, an area that defense counsel further acknowledged was a restricted area of a habitation structure pursuant to the burglary statute. Although conceding defendant's criminal trespass, defense counsel argued to the jury that the state failed to prove the offense of burglary because no evidence proved defendant committed the trespass with an intent to commit a crime, such as theft. Defense counsel further noted the state presented no evidence that defendant had taken anything from the locker room, although defendant admitted to the police he looked in open lockers. Based on defense counsel's concessions, a reasonable jury could find that defendant was guilty of the element of trespass for a burglary conviction.
 {¶ 11} Nevertheless, even apart from defense counsel's concessions of defendant's guilt on the trespass element, the state presented sufficient evidence at trial to allow the jury to find beyond a reasonable doubt that defendant committed the necessary trespass for a burglary conviction.
 {¶ 12} According to the state's evidence, a custodian of the hospital saw a stranger in the employee locker room on the fifth floor of the OSU East Hospital on December 18, 2003. The custodian testified the man, who was wearing a maroon and white jacket, was turning the knobs on a lock to get into one of the lockers. The custodian asked the person what he was doing there because the custodian never before had seen him. The man replied that he was a new employee of the hospital, left the locker room and quickly walked away in an adjacent hallway. The custodian informed the head nurse of the incident, and security was notified.
 {¶ 13} Evidence at trial indicated that entry to the employee locker room could be made in either of two ways. Persons could enter from an employee eating area that generally was accessible only by using a key to unlock a door to the staff eating area. Alternatively, entry could be gained through a hallway door that had a sign posted next to it that said "locker room." Near the hallway door to the locker room were two other doors, each of which had a "staff only" sign on them.
 {¶ 14} Shortly after the locker room incident, an OSU police officer apprehended a man walking away from the hospital who fit a description the custodian had given. The custodian was brought to the scene and identified the man, defendant, as the person he saw in the locker room. Defendant was placed under arrest and transported to police headquarters.
 {¶ 15} Upon questioning by the arresting officer, defendant stated he had been visiting some friends on the second floor and was "just walking around" in the hospital. Defendant explained that, as he was looking for a way out of the hospital, he inadvertently ended up on the hospital's fifth floor, where some construction workers pointed him into the locker room as a way to get out of the hospital. Defendant admitting looking into some open lockers but told the officer he did not take anything.
 {¶ 16} A police detective then questioned defendant about incidents of theft that had occurred in a locker room on the hospital's third floor three days earlier, December 15, 2003. Defendant confirmed to the detective that he had been in the hospital prior to December 18, 2003. As the detective began to question defendant about items that were taken from the hospital on December 15, 2003, defendant described a cell phone that had been stolen on that day and told the detective he could retrieve the cell phone for the police. Then, even though he had not been questioned about a wallet, defendant not only told the detective he could get back a woman's wallet that also had been stolen from the hospital's third floor locker room on December 15, 2003, but he drew a map indicating where the wallet could be found. Defendant first told the detective that he only had "information" regarding the wallet and was not involved in taking it, but he then stated that his fingerprints would be on the wallet because he had touched it. The wallet was recovered in the exact location defendant provided.
 {¶ 17} Viewing the evidence in a light most favorable to the prosecution, the jury reasonably could conclude that a person would know that a hospital employees' locker room was a restricted area, even though no notice was posted on the locker room door specifically stating "staff only." Bolstering such a conclusion is evidence that, upon being discovered in the employees' locker room trying to get into a locker, defendant lied to the custodian in telling him that defendant was a new employee who worked in the hospital. Based on the statement and defendant's hasty departure from the locker room upon being discovered and questioned by the custodian, the jury could reasonably infer that defendant was aware he was in a place where only hospital employees were allowed. Sufficient evidence thus supports the trial court's judgment.
 {¶ 18} Moreover, defendant presented no evidence to undermine the state's case. Rather, he chose to attempt to achieve that end through cross-examination of the state's witnesses. Nothing in cross-examination, however, caused the state's witnesses to falter or abandon any aspect of the testimony the witnesses rendered. Accordingly, we cannot say the jury's burglary verdict is against the manifest weight of the evidence.
 {¶ 19} Nonetheless, our review of the record reveals that the jury was not instructed on the charges on which defendant was indicted. The indictment in this case charged defendant with two counts of second-degree felony burglary as provided in R.C. 2911.12(A)(1). The trial court, however, failed to instruct the jury in accordance with R.C. 2911.12(A)(1) or the other statutory ground for second-degree felony burglary, R.C. 2911.12(A)(2). See R.C. 2911.12(C). Rather, the trial court's instructions to the jury for burglary were based solely on R.C.2911.12(A)(3) and (4), third and fourth-degree felony burglaries, respectively. R.C. 2911.12(C). While a second-degree felony has an authorized prison term of between two and eight years, pursuant to which the trial court sentenced defendant to a six-year prison term, the prison term authorized for a thirddegree felony is between one and five years, and the prison term authorized for a fourthdegree felony is between six and eighteen months. See R.C. 2929.14(A)(3) and (4).
 {¶ 20} R.C. 2945.79(D) states, in part, that "if the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict or finding accordingly, without granting or ordering a new trial, and pass sentence on such verdict or finding as modified, provided that this power extends to any court to which the cause may be taken on appeal." App.R. 12(B) grants appellate courts the power to modify judgments when the trial court has committed error prejudicial to the appellant.
 {¶ 21} To prevent manifest injustice to defendant from the incorrect instruction to which no objection was raised, we find it necessary to modify the judgment of conviction to indicate that the crime defendant committed was in violation of R.C. 2911.12(A)(4), the lesser degree of burglary on which the jury was instructed. See Crim.R. 53 (permitting the court to take notice of a plain error or defect affecting a defendant's substantial rights even if the error was not brought to the attention of the court). The evidence at trial, which we have found is sufficient to support a finding of second-degree felony burglary as provided in R.C.2911.12(A)(1), also amply supports a conviction of fourth-degree felony burglary pursuant to R.C. 2911.12(A)(4).
 {¶ 22} Accordingly, defendant's assignment of error is sustained to the extent indicated. Defendant's conviction for burglary is modified to fourth-degree felony burglary under R.C. 2911.12(A)(4), and the matter is remanded to the trial court, under the provisions of R.C. 2953.07, to allow the trial court to resentence defendant as authorized by R.C.2929.14(A)(4).
Judgment modified and case remanded for resentencing.
Petree and Christley, JJ., concur.
Christley, J., retired of the Eleventh Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.