[Cite as *State v. D.H.*, 2018-Ohio-559.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 16AP-501 |
| | | (C.P.C. No. 15CR-2912) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| [D.H.], | : | |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on February 13, 2018

---

**On brief**: *Ron O'Brien*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee. **Argued**: *Sheryl L. Prichard*.

**On brief**: *Giorgianni Law LLC*, and *Paul Giorgianni*, for appellant. **Argued**: *Paul Giorgianni*.

---

APPEAL from the Franklin County Court of Common Pleas

BROWN, P.J.

{¶ 1} Defendant-appellant, D.H., appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas, pursuant to a jury trial, finding him guilty of two counts of rape, both felonies of the first degree. For the reasons which follow, we affirm in part, reverse in part, and remand for resentencing.

{¶ 2} On June 15, 2015, appellant was indicted on three counts of rape, all in violation of R.C. 2907.02(A)(1)(b). Under count one, plaintiff-appellee, state of Ohio, alleged from April 8, 2006 to April 7, 2007, appellant engaged in sexual conduct, to wit: digital vaginal penetration, with S.M., who was less than 13 years of age. Count two alleged from April 8, 2006 to April 7, 2012, appellant engaged in sexual conduct, to wit: vaginal

intercourse, with S.M.; count three alleged from April 8, 2006 to April 7, 2009, appellant engaged in sexual conduct, to wit: cunnilingus, with S.M.

{¶ 3}   The events giving rise to the indictment began when S.M. was eight years old. Appellant is S.M.'s biological father; he was incarcerated on unrelated charges during S.M.'s early childhood. S.M. lived with her grandparents; her mother was "in and out a lot." (Tr. Vol. II at 66.)

{¶ 4}   A jury trial on the charges commenced on May 2, 2016. S.M. explained that she first met appellant when she "just was turning 8."  S.M.'s eighth birthday was April 8, 2006. After they met, S.M. and appellant began to spend time together "on the weekends." Appellant would pick S.M. "up usually on Fridays when [she] got out of school and then [they] would go over to his house." (Tr. Vol. II at 66.)

{¶ 5}   Appellant lived with his girlfriend, L.T. Appellant and L.T. were not married, but S.M. referred to L.T. as her stepmom.  Appellant and L.T. had two biological daughters. L.T. noted that S.M. would frequently come over and stay for "the weekend." (Tr. Vol. III at 246.)

{¶ 6}   S.M. testified that her "dad molested [her]," as both his "penis and his mouth" touched her "vagina." (Tr. Vol. II at 69.) S.M. stated that the "[f]irst time" appellant touched her vagina she "was 8."  S.M. explained that her "stepmom was there and she left the house. It was just [S.M.] and [appellant]. And [appellant] had [S.M.] come in their bedroom and had [her] lay on the bed, put a pillow over [her] face." (Tr. Vol. II at 70.)  S.M. stated appellant pulled her pants down, and she then "felt his penis rubbing up against [her] vagina." (Tr. Vol. II at 73.) The prosecutor asked S.M. if appellant's penis was rubbing "[b]etween the lips of your vagina?" S.M. responded "[y]es." (Tr. Vol. II at 74.) S.M. stated that, after appellant had rubbed his penis against her vagina, "[h]e smacked [her] leg and told [her she] could get up and told [her] that he loved [her] and he would never hurt [her]." (Tr. Vol. II at 75.)

{¶ 7}   S.M. stated appellant touched her vagina with his penis in this manner, "[p]robably almost every time [she] went over" to appellant's home. (Tr. Vol. II at 70.) S.M. noted that sometimes she was "laying on [her] back, and he sometimes had [her] lay on [her] stomach, but [she] always had a pillow or something over [her] face." (Tr. Vol. II at 72.)

{¶ 8}    When S.M. was "about 9" appellant touched her vagina with his mouth. (Tr. Vol. II at 81.) S.M. explained appellant had her "come in the room like he usually did and had [her] take [her] pants off and told [her] to sit on his face." (Tr. Vol. II at 82.) S.M. did not understand what appellant meant, so she "kind of just stood there and he kind of pulled [her] over towards him." (Tr. Vol II at 84.) S.M. "got on the bed and sat on" appellant, his face "was under [her] vagina" and he "started licking" her "vagina." (Tr. Vol. II at 84-85.) Eventually appellant had her "get up, and [she] walked and went back in the living room." (Tr. Vol. II at 85.)

{¶ 9}    On cross-examination, S.M. stated that appellant also "touched [her] with his fingers." (Tr. Vol. II at 110.) On redirect-examination, S.M. explained that once at appellant's home she "was sleeping on the couch, and [she] woke up to [appellant's] hands down [her] pants." (Tr. Vol. II at 166.)

{¶ 10} S.M. stated her weekend visits with her father continued until she "was about 11," when her father went back to "prison." (Tr. Vol. II at 67, 96.) S.M. explained that she did not initially tell her mother or grandparents about the abuse because she "really didn't understand what happened and [she] felt embarrassed." (Tr. Vol. II at 76.) S.M. disclosed the abuse to her mother "the day before [her] 16th birthday." (Tr. Vol. II at 89.) S.M. also "told [her] stepmom" and they contacted police. (Tr. Vol. II at 90.)

{¶ 11} S.M. wrote her father many letters after he went to prison in 2009. S.M. explained after police were involved, she wrote one letter to her father asking him "why he did those things to me." (Tr. Vol. II at 98.) In that letter, admitted as State's Exhibit A-1, S.M. asked appellant to "tell me the truth. Why would you have me come in the room and put a pillow over my head and [touch] me. I just don't understand why you would do [those] thing[s] to me." S.M. stated that she would "love to get a real sorry and why you would do that to me so I can move on with myself." (State's Ex. A-1.)

{¶ 12} S.M. confirmed she sent State's Exhibit A-1 to appellant, and stated she received a response from him "[p]robably about two weeks" later. (Tr. Vol. II at 102.) S.M. identified State's Exhibit A-2 as the "letter, he wrote me back." (Tr. Vol. II at 103.) State's Exhibit A-2 states, "I love you and I'm not mad about nothing! I wish you didn't feel the way you do! I don't remember a lot of things because I was always drinking! I am sorry if I have ever made you feel any type of way." Appellant states in the letter he will never "drink

or smoke again" because "[p]eople do shit they don't remember like crimes, sex, and other drugs," and tells S.M. that she can "talk to [him] about anything in the world. Some things just don't need to be said around other people, ya know?" (State's Ex. A-2.)

{¶ 13} Emily Combes, a forensic interviewer at the children's advocacy center at Nationwide Children's Hospital, stated that she interviewed S.M. on June 19, 2014. S.M. informed Combes "that her father had abused her," and that it "started when she was 8 and it ended when she was 11." (Tr. Vol. II at 212-13.) Combes noted that S.M. told her appellant "had digitally penetrated her when she was 8, * * * that he had rubbed his penis against her vagina when she was 8, and that he had performed oral sex on her when she was 9 or 10 years old." (Tr. Vol. II at 213.)

{¶ 14} Gail Horner, a pediatric nurse practitioner at the children's advocacy center, examined S.M. on June 19, 2014. Horner explained that, because the abuse occurred several years before the exam, she did not perform any evidence collection. Horner conducted an anogenital examination of S.M., which revealed "a nonacute disruption or a deep notch in her hymen," consistent "with penetration." (Tr. Vol. III at 317, 318.) However, at the time of the exam, S.M. "was also consensually-sexually active at 16-years-old," and Horner noted that the "notch in her hymen could have been from consensual sex." (Tr. Vol. III at 314, 318.) Horner testified that S.M. had "disclosed digital genital contact, his finger in her vagina. She described genital-to-genital contact, him rubbing his penis on her vagina, not penetration. She did not describe his penis going inside her vagina. And she also described oral-genital contact, his mouth to her vagina." (Tr. Vol. III at 313-14.)

{¶ 15} After Horner's testimony, the state rested. Appellant moved for an acquittal on all three counts. The trial court denied the motion.

{¶ 16} Appellant called the lead detective on the case, Jason Sprague, to testify. Detective Sprague stated that he went to Ross Correctional Facility where appellant was incarcerated and spoke with appellant about S.M.'s allegations. Detective Sprague affirmed that appellant voluntarily agreed to speak with him at the prison.

{¶ 17} Detective Sprague stated he discussed with L.T. and S.M. the possibility of S.M. writing a letter to appellant confronting him about the abuse. Defense counsel asked Detective Sprague if, when he went to speak with appellant at the prison, he checked with prison administration to see if they recorded when a particular inmate received mail.

Detective Sprague admitted that he "did not" ask that question, and that he was "not familiar with [the prison's] mail procedures" or "how much they document or don't document." (Tr. Vol. III at 371.)

{¶ 18} Appellant testified in his own defense. Appellant explained to the jury he was currently incarcerated for "[a]ggravated robbery, aggravated burglary and weapons under disability," and that he had been incarcerated for these crimes since "2009." (Tr. Vol. III at 374, 385.)

{¶ 19} Appellant explained that, shortly after S.M.'s mother became pregnant with S.M. in 1997, he "ended up going to prison for a case [he] caught." (Tr. Vol. III at 374.) Appellant served "[a]lmost seven years" on those previous charges, and was released in 2004. (Tr. Vol. III at 375.) Upon his release, appellant "went and introduced [himself] to [S.M.] because [he] had never seen her before." (Tr. Vol. III at 375.)

{¶ 20} "At first [appellant] didn't have a driver's license so [his] friend would take [him] over" to S.M.'s grandparent's home so he could see her. (Tr. Vol. III at 376-77.) Appellant obtained a driver's license in October 2004, and his visits with S.M. became "more frequent." (Tr. Vol. III at 377.) Around 2005, appellant met L.T. Appellant ultimately "moved into a condo" with L.T., and began "trying to do the family thing." (Tr. Vol. III at 382-83.) Appellant noted that he would pick S.M. up for their weekend visits, and they would do things like "watch movies, go swimming, go to the park, go camping on the weekend." (Tr. Vol. III at 383-84.) Appellant explained his visits with S.M. continued "[u]ntil [he] was incarcerated again," on "2009, April 29." (Tr. Vol. III at 385.)

{¶ 21} Appellant broke up with L.T. at the end of 2013 when he found out "she was letting [S.M.] stay at the house with her 22-year-old boyfriend." (Tr. Vol. III at 388.) Appellant noted that he was upset when he learned of S.M.'s much older boyfriend. When the detective came to the prison and asked appellant, "[i]s there any reason you can think of that [S.M.] could be making this up?" appellant responded "I can't think of anything," but then added S.M. might have made the allegations up because he "was threatening her boyfriend." (Tr. Vol. III at 396.)

{¶ 22} Appellant denied ever receiving State's Exhibit A-1. Appellant admitted he wrote State's Exhibit A-2, but asserted that the letter was not written in response to State's

Exhibit A-1, and was just "one of the many letters [he] wrote [his] daughter." (Tr. Vol. III at 390.)

{¶ 23} Appellant denied all of the allegations in the indictment. Appellant noted from April 2009 to April 2012, a portion of the time span alleged in count two, he was "[i]ncarcerated." (Tr. Vol. III at 392.) Appellant told the jury that S.M. had lied. (*See* Tr. Vol. III at 399.)

{¶ 24} On May 6, 2016, the jury returned verdicts of guilty on count two and count three, and a verdict of not guilty on count one.

{¶ 25} On May 17, 2016, appellant filed a post-trial motion for acquittal pursuant to Crim.R. 29(C). Appellant asserted the evidence was insufficient to support his conviction, as S.M. "never testified that [appellant] had vaginal intercourse with her." (Mot. for Not Guilty at 2.) The state filed a memorandum contra appellant's motion.

{¶ 26} On June 10, 2016, the trial court filed an entry denying appellant's post-trial motion for acquittal. The court noted that, with respect to count two, there was sufficient evidence to support the conviction, as the "victim did testify to vaginal intercourse, describing the Appellant rubbing his penis up and down between her labia." The court further observed that, although appellant failed to "provide argument in support of his motion" as to count three, the evidence was sufficient to support the conviction on count three. (June 10, 2016 Entry at 3.)

{¶ 27} The court sentenced appellant to a ten-year term of imprisonment on count two, to be served concurrent to a four-year term of imprisonment on count three. The court ordered appellant serve the sentence on the present case consecutively to the sentence appellant was serving on case No. 09CR-2015. The court further ordered appellant be classified at a Tier III sex offender.

{¶ 28} Appellant appeals, assigning the following nine assignments of error for our review:

> [I.] The trial court gave the jury only the more expansive definition of "sexual conduct" that was repealed by H.B. 95 effective August 3, 2006 and failed to give the jury the narrower definition that became effective August 3, 2006.
>
> [II.] With respect to Count 2, there is insufficient evidence of rape.

[III.] The trial court overruled [appellant's] post-trial motion for acquittal.

[IV.] The trial court overruled [appellant's] motion for acquittal at the close of the defense case.

[V.] The trial court overruled [appellant's] motion for acquittal at the close of the State's case.

[VI.] There would have been insufficient evidence of rape even if H.B. 95 had never been enacted, because "penetration of the vaginal cavity" within the meaning of former R.C. 2907.01(A) is penetration of the introitus.

[VII.] If the defense waived error with respect to the jury instruction regarding penetration, then [appellant] was deprived of his constitutional right to effective assistance of counsel.

[VIII.] [Appellant] was denied his constitutional right to effective assistance of counsel.

[IX.] The trial court overruled [appellant's] motion for mistrial.

{¶ 29} Appellant states his first seven assignments of error "pertain to only Count 2," and "all turn upon the legal question of what constitutes 'vaginal penetration' within the meaning of R.C. 2907.01(A)." (Appellant's Brief at 6.)

{¶ 30} R.C. 2907.02(A)(1)(b) provides that "[n]o person shall engage in sexual conduct with another," when "[t]he other person is less than thirteen years of age." R.C. 2907.01(A) defines "sexual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." The definition states that "[p]enetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A). Prior to August 3, 2006, the effective date of 2005 H.B. No. 95, R.C. 2907.01(A) defined sexual conduct as including the insertion, however slight, of any body part or object into the "vaginal or anal cavity of another." Through H.B. No. 95, the General Assembly changed only one word in R.C. 2907.01(A), replacing the word "cavity" with the word "opening."

{¶ 31} Appellant asserts he "should have been convicted on Count 2, if at all, of only the lesser included offense of gross sexual imposition in violation of R.C. 2907.05(A)(4)." (Appellant's Brief at 7.) R.C. 2907.05(A)(4) provides "[n]o person shall have sexual contact with another," when "[t]he other person * * * is less than thirteen years of age." Sexual contact is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 32} Citing *State v. Gilbert*, 10th Dist. No. 04AP-933, 2005-Ohio-5536, appellant notes "this Court, and apparently all the other Ohio appellate courts presented with the question in the days before H.B. 95, construed 'vaginal intercourse' and 'penetration of the vaginal cavity' to mean penetration of the vestibule—the space exterior to the introitus." (Appellant's Brief at 11.)  *See Taber's Cyclopedic Medical Dictionary*, 1135, 2318 (20th Ed.2005) (defining "introitus" as "[a]n opening or entrance into a canal or cavity, as the vagina," and "vestibule" as "[a] small space or cavity at the beginning of a canal, such as the aortic vestibule").  Appellant asserts that, pursuant to the H.B. No. 95 amendment to R.C. 2907.01(A), "vaginal penetration * * * is penetration of the opening—the introitus—and not merely penetration of the vestibule." (Appellant's Brief at 14.)

{¶ 33} In *Gilbert*, the appellant was convicted of unlawful sexual conduct with a minor. The evidence demonstrated that the appellant touched the victim " 'in [her] vaginal area,' " that the appellant's "fingers 'were on [her] clit and around the vaginal opening,' " and that the appellant's fingers went " 'less than a centimeter' inside the labia or lips of her vagina." *Id.* at ¶ 6. Although the appellant argued that such evidence was insufficient to "prove he digitally penetrated [the victim's] vaginal cavity," we observed that the "overwhelming majority of the appellate courts in this state which have addressed this point have declined to accept [appellant's] interpretation." *Id.* at ¶ 26-27.

{¶ 34} Initially, we noted in *State v. Childers*, 10th Dist. No. 96APA05-640 (Dec. 19, 1996), this court upheld a conviction for felonious sexual penetration, where the child victim testified the appellant had "touched her 'pee-hole' with his finger," although there was no "evidence of penetration into the vagina." *Gilbert* at ¶ 28, citing *Childers*. In *Childers*, the court held the " ' "entry of the anterior of the female genital organ, known as the vulva or labia, is sufficient penetration to constitute rape." ' " *Id.,* quoting *State v.*

*Carpenter*, 60 Ohio App.3d 104, 105 (5th Dist.1989), quoting *State v. Harder*, 3d Dist. No. 9-83-26 (Oct. 9, 1984), quoting Annotation, *What Constitutes Penetration in Prosecution for Rape or Statutory Rape*, 76 A.L.R.3d 163, 171 (1977).

{¶ 35} In *Gilbert*, we observed in *State v. Lucas*, 2d Dist. No. 18644 (Sept. 21, 2001), the court held if " 'the evidence shows that the force of the object caused the outer lips of the victim's vagina, the labia, to spread,' " vaginal penetration had occurred. *Gilbert* at ¶ 33, quoting *Lucas*. We noted in *State v. Grant*, 2d Dist. No. 19824, 2003-Ohio-7240, the "court found that the victim's testimony that appellant inserted his finger one-half inch between the lips of her vagina was legally sufficient to demonstrate sexual conduct," because, if an object " 'cause[d] the labia majora to spread, penetration ha[d] occurred.' " *Gilbert* at ¶ 34, quoting *Grant* at ¶ 30.

{¶ 36} Thus, in *Gilbert*, we found the evidence "sufficient to establish vaginal penetration," based on the victim's testimony "that appellant inserted his fingers inside the lips of her vagina far enough to reach her clitoris (a part of the vulva), an action that undoubtedly caused the labia majora to spread." *Id.* at ¶ 34, 35. However, we noted our concern that "[a]s it stands now, touching a single labia on the side away from the vaginal cavity is sexual contact, touching the opposite side would be sexual conduct." *Id.* at ¶ 37. *See also State v. Roberts*, 1st Dist. No. C-040547, 2005-Ohio-6391, ¶ 62 (observing that "penetration solely of the labia" is sufficient to demonstrate penetration of the vaginal cavity); *State v. Farr*, 3d Dist. No. 13-06-16, 2007-Ohio-3136, ¶ 17 (noting that "sexual conduct via vaginal penetration is proved if the victim's labia are penetrated"). We found the issue "worthy of further consideration by the legislature or the Supreme Court of Ohio." *Gilbert* at ¶ 38. The Supreme Court of Ohio did not accept *Gilbert* for review. *State v. Gilbert*, 108 Ohio St.3d 1475, 2006-Ohio-665. The General Assembly passed H.B. No. 95, replacing the word "cavity" in R.C. 2907.01(A) with the word "opening."

{¶ 37} In construing a statute, a court's paramount concern is the legislative intent in enacting the statute. *State v. S.R.*, 63 Ohio St.3d 590, 594 (1992), citing *Featzka v. Millcraft Paper Co.*, 62 Ohio St.2d 245, 247 (1980). In determining legislative intent, the court first looks to the language in the statute and the purpose to be accomplished. *Id.* at 594-95, citing *Henry v. Central Natl. Bank*, 16 Ohio St.2d 16 (1968). "When a statute's meaning is clear and unambiguous, we apply the statute as written." *State v. Gonzales*, 150

Ohio St.3d 276, 2017-Ohio-777, ¶ 4. If a statute is ambiguous, then the court may consider the legislative history and the circumstances under which it was enacted, as well as the consequences of a particular construction. R.C. 1.49.

{¶ 38} "In cases of statutory construction, the words used in a statute will be accorded their common, everyday meaning unless a contrary intent is expressed." *State v. Wells*, 91 Ohio St.3d 32, 34 (2001), citing R.C. 1.42. "To determine the common, everyday meaning of a word, we have consistently used dictionary definitions." *Id. See also id.* at 34-35, quoting *Webster's New World Dictionary* 224 (3d Ed.1991) (analyzing the meaning of penetration of the "anal cavity" under former R.C. 2907.01(A), and concluding that, as the "everyday meaning of 'cavity' is 'a natural hollow place *within* the body,' " penetration into "the anal cavity occurs when some part of the body or any other item is inserted into the anus"). (Emphasis sic.)

{¶ 39} The vagina is "[a] musculomembranous tube that forms the passageway between the cervix uteri and the vulva." *Taber's Cyclopedic Medical Dictionary*, 2288 (20th Ed.2005). The vulva is "[t]hat portion of the female external genitalia lying posterior to the mons veneris, consisting of the labia majora, labia minora, clitoris, vestibule of the vagina, [and] vaginal opening." *Taber's* at 2338. The labia majora are the "two folds of skin and adipose tissue on either side of the labia minora and vaginal opening; they form the lateral borders of the vulva." *Taber's* at 1186. The labia minora are the "two thin folds of integument that lie between the labia majora. They enclose the vestibule. * * * In young girls, they are hidden entirely by the labia majora." *Taber's* at 1186.

{¶ 40} Thus, any force which causes the labia to spread apart, and allows the slightest insertion of any object or part of the body into the vaginal opening, amounts to sexual conduct under R.C. 2907.01(A). Under the former "cavity" definition and *Gilbert*, any touching on the inside of the labia amounted to sexual conduct. Pursuant to the statutory amendment, there must be penetration of the vaginal opening, however slight, to constitute sexual conduct.

{¶ 41} Appellant's first assignment of error asserts the trial court erred in failing to provide the jury with the vaginal opening definition of sexual conduct. The court's instruction to the jury defined sexual conduct as including "the insertion, however slight,

of any part of the body or any instrument, apparatus or other object into the vaginal or anal cavity of another." (Jury Instructions at 6.)

{¶ 42} Defense counsel did not object to the court's instruction as to sexual conduct, and did not ask the court to provide the jury with the vaginal opening definition of sexual conduct. Although the jury submitted two questions during deliberation, neither question concerned the meaning of vaginal intercourse or vaginal cavity. Appellant asserts the court should have instructed the jury on both "cavity" and "opening" definitions of sexual conduct, and instructed the jury the opening "definition applied to conduct occurring at or after 12:01 a.m. August 3, 2006." (Appellant's Brief at 24.)

{¶ 43} " 'As a general rule, an appellant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged.' " *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 98, quoting *State v. Adams*, 62 Ohio St.2d 151, 153 (1980). "A jury instruction is proper when it adequately informs the jury of the law." *State v. Morrow*, 10th Dist. No. 99AP-582 (Mar. 2, 2000). If the instructions, taken in their entirety, " 'fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled.' " *State v. Calderon*, 10th Dist. No. 05AP-1151, 2007-Ohio-377, ¶ 55, quoting *Toth v. Oberlin Clinic*, 9th Dist. No. 01CA007891, 2002-Ohio-2211, ¶ 45. *See also State v. Murphy*, 10th Dist. No. 05AP-910, 2006-Ohio-4341, ¶ 23 (stating that "[r]etrial is permissible when an appellate court sets aside a conviction due to error in the proceedings," i.e. erroneous jury instructions, "but not when the reversal is premised upon evidentiary insufficiency"). "Whether jury instructions correctly state the law is a question of law that an appellate court reviews de novo." *Calderon* at ¶ 55.

{¶ 44} Crim.R. 30(A) provides that "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Non-compliance with Crim.R. 30(A) waives all but plain error. *State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 165. *See also* Crim.R. 52(B). As defense counsel failed to object to the court's sexual conduct instruction, appellant has waived all but plain error.

{¶ 45} "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. "For a court to notice plain error, the error must be an obvious defect in a trial's proceedings, it must have affected substantial rights, and it must have affected the outcome of the trial." *State v. Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, ¶ 30, citing *State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, ¶ 11. Even if an error satisfies these three requirements, "Crim.R. 52(B) states only that a reviewing court 'may' notice plain forfeited errors; a court is not obliged to correct them." *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶ 46} Appellant asserts if the court had provided the jury with both definitions of sexual conduct, the jury would have found him not guilty of rape on count two. However, in providing the jury with both definitions, the court would still have provided the jury with the vaginal cavity definition. The court provided the jury solely with the vaginal cavity definition, and the jury found appellant guilty on count two.

{¶ 47} The court did not define vaginal cavity for the jury, or inform the jury regarding *Gilbert*. Appellant acknowledges that, to a "layman," the "plain, everyday meaning of the term 'vaginal cavity' is the cavity interior to the introitus." (Appellant's Brief at 10.) Thus, as the court only provided the jury with the vaginal cavity definition without further explanation, the court arguably made the state's proof more difficult, as the term vaginal cavity appears to require further penetration into the vaginal canal than the term vaginal opening.

{¶ 48} S.M. testified the abuse started when she was eight years old and continued until she was 11 years old. Thus, the court's definition of sexual conduct was a correct statement of the law for any acts of rape by vaginal intercourse that occurred between April 8, 2006 and August 3, 2006.

{¶ 49} Accordingly, although the court's instruction was erroneous for the conduct which occurred after August 3, 2006, we do not find the court's instruction as a whole rises to the level of plain error. Based on the foregoing, appellant's first assignment of error is overruled.

{¶ 50} Appellant's second assignment of error asserts there was insufficient evidence to support his rape conviction on count two. Appellant's third assignment of error

asserts the trial court erred in denying his post-trial motion for acquittal. Appellant's fifth assignment of error asserts the trial court erred in denying his motion for acquittal made at the close of the state's case.

{¶ 51} Appellant's fourth assignment of error asserts the trial court erred in denying his motion for acquittal at the close of the defense's case. However, appellant did not move for acquittal at the close of the defense's case-in-chief. (*See* Tr. Vol. III at 410-12.) Accordingly, appellant's fourth assignment of error is overruled.

{¶ 52} Pursuant to Crim.R. 29(A), "after the evidence on either side is closed," the court "shall order the entry of a judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(C) provides that "[i]f a jury returns a verdict of guilty * * * a motion for judgment of acquittal may be made or renewed within fourteen days after the jury is discharged." Because a Crim.R. 29 motion questions the sufficiency of the evidence, "[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence." *State v. Hernandez*, 10th Dist. No. 09AP-125, 2009-Ohio-5128, ¶ 6; *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 53} Whether evidence is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The evidence is construed in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; *State v. Conley*, 10th Dist. No. 93AP-387 (Dec. 16, 1993). When reviewing the sufficiency of the evidence, the court does not weigh the credibility of the witnesses. *State v. Yarbrough,* 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79.

{¶ 54} Appellant asserts there was "insufficient evidence of 'sexual conduct' " on count two, as the state failed to prove that he "ever penetrated the introitus." (Appellant's Brief at 25.) Appellant further asserts that the state failed to establish the rape by vaginal intercourse occurred before "August 3, 2006, when H.B. 95 became effective." (Appellant's Brief at 24-25.) We agree.

{¶ 55} The evidence presented during the state's case-in-chief demonstrated when S.M. "was 8," appellant "rub[bed] his penis * * * up and down" against "[her] vagina." (Tr.

Vol. II at 70, 75.) S.M. confirmed that appellant rubbed his penis up and down "[b]etween the lips of [her] vagina." (Tr. Vol. II at 74.) S.M. informed Combes that appellant "rubbed his penis against her vagina when she was 8." (Tr. Vol. II at 213.) However, there is no evidence demonstrating that appellant inserted his penis even slightly into S.M.'s vaginal opening.

{¶ 56} Thus, although the evidence demonstrates appellant penetrated S.M.'s labia, the evidence fails to demonstrate appellant inserted his penis into S.M.'s vaginal opening. *See State v. Frazier*, 10th Dist. No. 05AP-1323, 2007-Ohio-11, ¶ 27 (finding the evidence "insufficient to support the convictions for rape by digital vaginal penetration," as the victim "testified that appellant repeatedly touched her vagina with his hands," but the victim "did not testify that appellant inserted his hand or fingers into her vagina"). *Compare State v. Meador*, 12th Dist. No. CA2008-03-042, 2009-Ohio-6548, ¶ 16 (finding the evidence "sufficient to establish that penetration occurred," as the child victim "testified that it 'kind of felt like' appellant's fingers were inside her vagina"); *State v. Melendez*, 9th Dist. No. 08CA009477, 2009-Ohio-4425, ¶ 30, 17 (finding "sufficient evidence of penetration into the victim's vaginal opening," as the child victim "testified that Melendez touched her both outside and inside" of her vaginal area, and the victim "demonstrated the depth of the penetration using a crayon to simulate Melendez' finger" and she "placed the crayon halfway inside the box"). *Id.* at ¶ 17.

{¶ 57} The evidence that appellant placed his penis between S.M.'s labia would be sufficient to establish sexual conduct under former R.C. 2907.01(A) and *Gilbert*. However, the state failed to present evidence to establish the initial act of this conduct occurred before August 3, 2006.

{¶ 58} S.M. testified that she "just was turning 8" when she first met appellant, and that the "[f]irst time he did it," i.e. touched her vagina with his penis, "[she] was 8." (Tr. Vol. II at 66, 70.) S.M. was eight years old from April 8, 2006 to April 7, 2007. L.T. testified S.M. "was 7, 7 ½" when she first met S.M. (Tr. Vol. III at 246.) L.T. stated her first daughter, who was born June 26, 2006, was either "a baby when [L.T.] first met [S.M.]," or that the child was not "born yet when [S.M.] first came over." (Tr. Vol. III at 247.) Thus, although L.T.'s testimony and S.M.'s testimony demonstrate that S.M. first went to L.T.'s and appellant's home around April or June 2006, there is no evidence demonstrating when,

between April 8, 2006 and April 7, 2007, the first act of appellant rubbing his penis between the lips of S.M.'s vagina occurred.

{¶ 59} Generally, "[i]n cases alleging sexual misconduct involving a child, the state need not prove the offense occurred on an exact date." *State v. T.E.H.*, 10th Dist. No. 16AP-384, 2017-Ohio-4140, ¶ 61. *See also State v. Reinhardt*, 10th Dist. No. 04AP-116, 2004-Ohio-6443, ¶ 20 (noting that "[t]he precise date and time a rape occurs is not an essential element of the crime"); *State v. Presley*, 10th Dist. No. 02AP-1354, 2003-Ohio-6069, ¶ 59, citing *State v. Mundy*, 99 Ohio App.3d 275, 296 (2d Dist.1994).

{¶ 60} While the state was not obligated to prove the precise date the conduct occurred in the instant case, due to the H.B. No. 95 amendment to R.C. 2907.01(A), appellant's conduct of rubbing his penis between the lips of S.M.'s vagina could only constitute sexual conduct if it occurred prior to August 3, 2006. *See also State v. Crosky*, 10th Dist. No. 06AP-655, 2008-Ohio-145, ¶ 62 (noting that "[a]lthough we recognize the difficulty inherent in proving sexual conduct involving a child victim, this difficulty does not absolve the State of its burden to present sufficient evidence"). Because the evidence fails to demonstrate the initial act of appellant rubbing his penis between S.M.'s labia occurred before August 3, 2006, there is insufficient evidence to support appellant's conviction under count two.

{¶ 61} "When evidence is insufficient to prove a[n] appellant committed a specific offense, but the evidence is sufficient to support a guilty verdict on a lesser included offense, a reviewing court may modify a judgment to reflect a conviction on the lesser included offense." *Id.* at ¶ 63. *See also* R.C. 2945.79(D) (stating that "if the evidence shows the appellant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict or finding accordingly, without granting or ordering a new trial"); Crim.R. 33(A)(4); *Frazier* at ¶ 28. App.R. 12(B) grants appellate courts the power to modify judgments when the trial court has committed error prejudicial to the appellant. *State v. Hagwood*, 10th Dist. No. 04AP-879, 2005-Ohio-2131, ¶ 20. "Gross sexual imposition is a lesser included offense of rape." *Crosky* at ¶ 63.

{¶ 62} S.M.'s testimony that appellant rubbed his penis against her vagina, while insufficient to prove sexual conduct, is sufficient to prove appellant engaged in sexual

contact with S.M. As such, the evidence supports a conviction for gross sexual imposition on count two.

{¶ 63} Based on the foregoing, appellant's second, third, and fifth assignments of error are sustained, solely as they relate to count two. Appellant's rape conviction on count two will be vacated, and modified to a conviction for gross sexual imposition.

{¶ 64} Appellant notes his sixth and seventh assignments of error are "moot if the Court vacates [appellant's] rape conviction under any combination of any other assignments of error." (Appellant's Brief at 25-26.) Accordingly, our ruling on appellant's second, third, and fifth assignments of error, renders appellant's sixth and seventh assignment of errors moot.

{¶ 65} Appellant's eighth assignment of error asserts he was deprived of the effective assistance of counsel when his counsel: (1) acquiesced to, and contributed to, the jury's learning appellant was incarcerated for committing a violent felony, and (2) when counsel failed to reiterate his demand for a bill of particulars.

{¶ 66} To establish a claim of ineffective assistance of counsel, appellant must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Appellant must show: (1) defense counsel's performance was so deficient that he was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution, and (2) that defense counsel's errors prejudiced appellant. *Id.* To show prejudice, an appellant must establish a reasonable probability that, but for his counsel's unprofessional errors, the result of the trial would have been different. *Id.* at 694. The failure to make either showing defeats a claim of ineffectiveness of trial counsel. *Id.* at 697.

{¶ 67} In Ohio, a properly licensed attorney is presumed competent. *State v. Monford*, 190 Ohio App.3d 35, 2010-Ohio-4732, ¶ 78 (10th Dist.), citing *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 301 (1965). Matters of trial strategy and even debatable trial tactics do not establish ineffective assistance of counsel. *Id.* at ¶ 79, citing *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101.

{¶ 68} Appellant asserts that "[n]either necessity nor strategy justified defense counsel's acquiescing to, and contributing to, the jury's learning that [appellant] is an incarcerated violent felon." (Appellant's Brief at 40.) We disagree.

{¶ 69} Appellant's status as an incarcerated felon was critical to the defense in various ways. Appellant relied heavily on the date of his incarceration in 2009 to argue he could not have committed the acts alleged in count two for at least half of the time frame alleged. Appellant used the fact that he voluntarily spoke with Detective Sprague at the prison to demonstrate he had nothing to hide from police. Defense counsel relied on the fact that Detective Sprague did not determine whether the prison recorded when a particular inmate received mail to bolster appellant's assertion that he never received State's Exhibit A-1 from S.M.

{¶ 70} Moreover, "[w]hen an accused testifies at trial, Evid.R. 609(A)(2) allows the state to impeach the accused's credibility with evidence that the accused has been convicted of an offense punishable by imprisonment in excess of one year." *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 151. Evid.R. 609(A)(2) provides that "evidence that the accused has been convicted of a crime is admissible if the crime was punishable by * * * imprisonment in excess of one year," and if the "court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 71} Appellant asserts his prior convictions were inadmissible under Evid.R. 609(A)(2) because the "probative value of such testimony was *de minimis*—[appellant] robbery/burglary conviction shedding little light on his credibility." (Appellant's Brief at 39.) We disagree. The present case was a credibility battle between S.M. and appellant: S.M. testified her father sexually abused her from the age of 8 until she was 11 years old; appellant denied all of the charges and testified S.M. lied to the jury.

{¶ 72} When an appellant's "version of what occurred" is contradicted by "other witnesses, his credibility [is] at issue. Under these circumstances, it [is] appropriate for the state to impeach appellant and to test his credibility by introducing testimony regarding these prior convictions." *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, ¶ 27. *See also State v. Owings*, 2d Dist. No. 21429, 2006-Ohio-4281, ¶ 29, citing *State v. Goney*, 87 Ohio App.3d 497, 503 (2d Dist.1993). Accordingly, in the present case, the probative value of appellant's prior convictions was great. As appellant's prior convictions were for violent theft crimes, dissimilar from the rape charges at issue, the danger of unfair prejudice resulting from introduction of appellant's prior convictions was low. *Compare State v.*

*Topping*, 4th Dist. No. 11CA6, 2012-Ohio-5617, ¶ 43 (noting that "[w]hen the prior conviction is for the same crime with which a[n] appellant is presently charged, the risk of unfair prejudice is greater").

{¶ 73} Thus, as appellant was going to testify, and his prior convictions were going to be admissible under Evid.R. 609(A)(2), defense counsel made the strategic choice to address appellant's prior convictions first. Defense counsel informed the jury during opening statement that he did not "represent a choir boy. [Appellant] is in prison right now for robbing someone with a gun. He is a tough guy. He has been in the Ohio Department of Rehabilitation and Correction[] since 2009." (Tr. Vol. II at 57-58.) Defense counsel explained appellant "stuck a gun in somebody's face and he got convicted of aggravated robbery and he went and started serving his sentence." (Tr. Vol. II at 59.)

{¶ 74} "[T]he choice to raise damaging evidence first is an acceptable trial strategy that [an appellant] can use to enhance his credibility." *State v. Smith*, 9th Dist. No. 23542, 2007-Ohio-5119, ¶ 15. Indeed, "taking the sting out of the prosecution's anticipated line of questioning would clearly constitute sound trial strategy." *State v. Gott*, 9th Dist. No. 93CA005560 (Dec. 22, 1993). *See also State v. Hill*, 10th Dist. No. 09AP-398, 2010-Ohio-1687, ¶ 19.

{¶ 75} Appellant asserts the fact that State's Exhibits A-1 and A-2 were mailed to and from appellant in prison "was not important to explain the letters," and was a "ruse" by the state to permit the jury "to know that [appellant] was imprisoned for the sake of the inference of guilt." (Appellant's Brief at 35-36.) However, the fact the letters were sent to and from appellant in prison was important context to understand the letters. Furthermore, as noted, appellant relied on the fact that he was in prison to argue there was a lack of proof demonstrating that he received State's Exhibit A-1. The defense also presented several letters S.M. sent her father while he was incarcerated to demonstrate appellant and S.M. had a positive relationship during the years prior to S.M.'s disclosure of the abuse. (*See* Appellant's Ex. A-1 through A-16.)

{¶ 76} Defense counsel's strategic choice to address appellant's prior convictions and status as an incarcerated felon does not amount to ineffective assistance of counsel.

{¶ 77} Regarding the bill of particulars, appellant filed a request for a bill of particulars on June 30, 2015. The record does not contain a bill of particulars.

{¶ 78} "A bill of particulars has a limited purpose—to elucidate or particularize the conduct of the accused alleged to constitute the charged offense." *State v. Sellards*, 17 Ohio St.3d 169, 171 (1985). "In a criminal prosecution the state must, in response to a request for a bill of particulars * * * supply specific dates and times with regard to an alleged offense where it possesses such information." *Id.* at syllabus. *See also* Crim.R. 7(E). However, "where the inability to produce a specific time or date when the criminal conduct occurred is, as would be the more typical case, without material detriment to the preparation of a defense, the omission is without prejudice, and without constitutional consequence." *Id.* at 172. Thus, a reviewing court must ask "whether appellant's lack of knowledge concerning the specific facts a bill of particulars would have provided him actually prejudiced him in his ability to fairly defend himself." *State v. Chinn*, 85 Ohio St.3d 548, 569 (1999).

{¶ 79} Appellant fails to demonstrate any actual prejudice resulting from the lack of a bill of particulars. The indictment was sufficiently clear; it informed appellant of the date range applicable to each charge, and the specific conduct alleged under each charge. *See State v. Ritchie*, 9th Dist. No. 95CA006211 (Apr. 2, 1997) (noting that an indictment involving child sexual abuse may "set forth a time frame in the indictment and charge the accused with offenses which reasonably fall within that period"); *State v. Williams*, 11th Dist. No. 2000-A-0005 (June 1, 2001) (noting that "if an indictment is sufficiently clear, a failure to request a bill of particulars does not rise to the level of ineffective assistance of counsel").

{¶ 80} Appellant asserts the lack of a bill of particulars prejudiced him because the "dates on which the offenses are alleged to occur were never specified," making it "virtually impossible to mount an alibi defense." (Appellant's Brief at 41.) However, there is no indication in the record the state possessed any information regarding more specific dates. S.M. did not provide specific dates during her testimony; rather, she identified when particular conduct occurred by the age she was when the conduct occurred. Appellant never filed a notice of alibi, and fails to state what his alleged alibi defense would have been. Accordingly, appellant's assertion he would have presented an alibi defense is speculative and does not support a finding of prejudice. *See Reinhardt* at ¶ 22; *State v. Vu*, 9th Dist. No. 11CA0042-M, 2012-Ohio-746, ¶ 31.

{¶ 81} Appellant lastly asserts the lack of specific dates rendered him unable to "exploit the biggest seeming anomaly in S.M.'s testimony," that S.M. stated the abuse would occur when L.T. was at work as a school teacher, but S.M. only went to appellant's and L.T.'s home on the weekends. (Appellant's Brief at 41.) However, defense counsel did exploit this anomaly, thoroughly questioning S.M. about this inconsistency on cross-examination. (*See* Tr. Vol. II at 116-19.) Defense counsel also questioned L.T. about S.M.'s statement that the abuse occurred when L.T. was at work, and L.T. explained S.M. stated the abuse occurred when L.T. was "at work or I was at the grocery or I may have been at my brother's. I wasn't there is what she said. I wasn't there." (Tr. Vol. III at 275.) L.T. also noted that she would occasionally go into work on the weekends "especially at the beginning of the school year." (Tr. Vol. III at 296.)

{¶ 82} Appellant fails to demonstrate any prejudice resulting from defense counsel's failure to compel the state to file a bill of particulars. As such, appellant fails to establish ineffective assistance of counsel.

{¶ 83} Based on the foregoing, appellant's eighth assignment of error is overruled.

{¶ 84} Appellant's ninth assignment of error asserts the trial court erred in denying his motion for a mistrial. Appellant moved for a mistrial after L.T., in response to a question on direct examination asking when S.M. told her about the abuse, stated "I remember the exact date because of what happened to my four-year-old at that time. It was June 10," 2014. (Tr. Vol. III at 253.)

{¶ 85} Defense counsel objected and asked the court to exclude the statement. Defense counsel acknowledged the answer L.T. gave was "not talking about [appellant]," but asserted the jury was going to "assume that something happened between him and his other daughter." (Tr. Vol. III at 253-54.) The prosecutor noted that what L.T. was "referring to [was] that another child in her family was assaulted by a different child in her family, not the Appellant." (Tr. Vol. III at 254.)

{¶ 86} The court excused the jury, and cautioned L.T. to only answer the question asked to her. Defense counsel moved for a mistrial, and the court denied the motion. The court recalled the jury, and instructed the jury to "disregard the response and put it completely out of your mind. You are not to speculate as to what the answer was or why it

was made or why the Court has decided to instruct you to disregard that response." (Tr. Vol. III at 262.)

{¶ 87} "The granting or denying of a mistrial under Crim.R. 33 rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, 182 (1987). A mistrial should be declared only when justice requires and when a fair trial is no longer possible. *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). If an error occurs, such as the jury hearing improper testimony, the "jury is presumed to follow the instructions, including curative instructions, given it by a trial judge." *State v. Garner*, 74 Ohio St.3d 49, 59 (1995).

{¶ 88} Appellant asserts that, from L.T.'s statement, "one would infer, in the context of this trial, that [appellant] sexually abused their four-year-old daughter." (Appellant's Brief at 43.) We disagree. L.T.'s statement does not attribute any conduct to appellant. Moreover, the evidence demonstrated that appellant had been incarcerated since 2009, and L.T. stated that something happened to her four year old on June 10, 2014. Accordingly, L.T.'s fleeting comment about something that happened to her four year old, which was immediately followed by a curative instruction, did not deprive appellant of a fair trial.

{¶ 89} Appellant's ninth assignment of error is overruled.

{¶ 90} Having overruled appellant's first, fourth, eighth, and ninth assignments of error, but having sustained appellant's second, third, and fifth assignments of error, thereby rendering appellant's sixth and seventh assignments of error moot, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas. Appellant's conviction on count two is modified to a conviction for gross sexual imposition, a felony of the third degree, in violation of R.C. 2907.05(A)(4). The case is remanded to the trial court for resentencing on the same.

*Judgment affirmed in part and reversed in part; cause remanded.*

TYACK and DORRIAN, JJ., concur.

————————————————