[Cite as *State v. Caldwell*, 2019-Ohio-3015.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                              :

    Plaintiff-Appellee,               :
                                                                No.18AP-814
v.                                            :          (M.C. No. 2018CRB-19200)

Walter Caldwell,                      :          (ACCELERATED CALENDAR)

    Defendant-Appellant.          :

_____

D E C I S I O N

Rendered on July 25, 2019

_____

**On brief:** *Zachary M. Klein*, City Attorney, *Bill R. Hedrick,* and *Orly Ahroni*, for appellee. **Argued:** *Orly Ahroni.*

**On brief:** *Campbell Law, LLC*, and *April F. Campbell,* for appellant.

_____

APPEAL from the Franklin County Municipal Court

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Walter Caldwell, presently appeals from a portion of a Franklin County Municipal Court judgment entry sentencing him to a six-month sentence as the result of the jury's finding him guilty of assaulting S.S., his former girlfriend. He presents three assignments of error for our consideration, and after due consideration of each, we affirm the municipal court's entry in its entirety.

## I. FACTS & PROCEDURAL HISTORY

{¶ 2} Plaintiff-appellee, State of Ohio, complaint filed on September 16, 2018, charges Caldwell with "knowingly caus[ing] physical harm to another, to wit: S.S. by

punching her with a closed fist in the face at least three times" in violation of Columbus City Code 2303.13(A). *See* Compl.

{¶ 3}  Testimony at Caldwell's resultant October 17, 2018 trial revealed as follows. On the noted date, around 3:00 p.m., Caldwell and S.S., one of his girlfriends at the time, loudly argued outside the north side branch of the Columbus Public Library at 1423 North High Street. (Oct. 15 & 16, 2018, Tr. Vol. II at 261, 269; Oct. 17 & 18, 2018, Tr. Vol. III at 508-9.) Their disagreement continued as they entered the facility. (Tr. Vol. II at 269.) Library employee Daniel Wilkens was at the front desk near the entrance when Caldwell and S.S. entered. Wilkens asked them to leave, describing their "shouting," profane-laced interaction as a "violent argument." Caldwell declined to leave, opting instead to unsuccessfully attempt to hit Wilkens with an object.

{¶ 4}  Caldwell then chased S.S. across the library. Robert Parrish, the security guard on duty, instructed Caldwell to leave the premises. Caldwell obliged, although he told Parrish he would "kick his ass" on his way out.

{¶ 5}  Caldwell and S.S. exited the building. Caldwell then threw a box at S.S. but missed. She returned to the library's entrance. Caldwell attempted to follow her in, but Parrish exited the library in front of S.S. While Parrish's back was turned, Caldwell lunged toward S.S. and pushed her to the ground. She freed herself. At that point, Parrish walked in front of Caldwell. Words were exchanged, and then S.S., who was standing behind Parrish, sprayed Caldwell with a substance. Caldwell retreated, but then secured the box he had thrown at S.S. earlier and hit Parrish with the box while Parrish was standing in the doorway. During a scuffle, Caldwell punched Parrish, who then returned to the inside of the library. Caldwell proceeded to enter and exit the library twice before finally leaving the premises. Library officials then locked the doors. (Tr. Vol. II at 294.)

{¶ 6}   S.S. began walking towards Newport Music Hall. Caldwell followed and began hitting her. She escaped, and headed toward a Subway restaurant. She screamed for someone to call the police. While that call was being made, Caldwell found her and punched her in the face. She entered Subway and locked herself in the restaurant's bathroom. Caldwell fled, but thanks to descriptions provided by the five separate individuals who called 911, Columbus Police Officers Steven Baird and Matthew Brown captured and arrested him. The foregoing course of events occurred in less than one hour and within one-half mile of the library's location. (Tr. Vol III at 407-39.)

{¶ 7}   S.S. did not testify. Caldwell did. Caldwell stated that S.S. was one of his girlfriends at the time of the attack. (Tr. Vol III at 508-9.) He admitted to being with S.S. all day on September 16, 2018. *Id.* at 503. He acknowledged following her into the library, yelling at her, and calling her profane names. *Id.* at 503, 517. He acknowledged hitting Parrish. *Id.* at 506, 526. He said he threw a box containing a wooden gun at S.S. *Id.* at 503. He admitted to pushing her, but denied hitting her. *Id.* at 504, 507. He could not remember if he went to Subway. *Id.* at 525.

{¶ 8}   The state charged Caldwell with two counts of assault as to S.S. and Parrish. *See* Sept. 16, 2018 Compl.  The state additionally levied a domestic violence charge under Columbus City Code 2919.25 against Caldwell for his alleged punching of S.S., reasoning that S.S. was his live-in girlfriend on the date in focus. *Id.*

{¶ 9}   The jury returned a guilty verdict on both assault charges involving S.S. and Parrish. (*See* Oct. 19, 2018 Guilty Verdicts). The municipal court granted Caldwell's Crim.R. 29 motion as to the domestic violence count. The trial judge imposed two consecutive six-month sentences—one for the assault on Parrish and one for the assault on S.S.—and this appeal followed as to the latter sentence only.

## II. ASSIGNMENTS OF ERROR

{¶ 10}  Caldwell presents three claimed errors for our review. Those include the following:

> [1.] Caldwell's conviction for assault on [S.S.] should be reversed: the trial court changed the identity of this offense by constructively amending the complaint, which undermined confidence in the jury's unanimous verdict.
>
> [2.] Caldwell's convictions should be reversed because Caldwell's Due Process right to a fair trial was denied.
>
> [3.] Caldwell's convictions should be reversed because of prosecutorial misconduct in closing arguments, which prejudicially affected Caldwell.

## III.  THE TRIAL COURT DID NOT AMEND THE COMPLAINT

{¶ 11}   Under the first assignment of error, Caldwell contends he was prosecuted for three separate incidents of assault, although he was only charged with one, in violation of Crim.R. 3 and Crim.R. 7. He further argues the trial court's inclusion of evidence regarding Caldwell's altercations with S.S. at the Newport Music Hall and Subway violated his right to a unanimous verdict under Crim.R. 31. The state responds that the complaint satisfies both Crim.R. 3 and Crim.R. 7 such that reversal is not proper under this assignment. The state also counters that Caldwell's verdict was unanimous because his actions constituted a single course of conduct. After due review, we conclude that the state's contentions prove more persuasive.

{¶ 12}  We modify the order of Caldwell's arguments for ease of analysis.

### A.  Crim.R. 3

{¶ 13}  Caldwell argues the complaint charged him only with assaulting S.S. at the library. Yet, Caldwell argues, the municipal court allowed the admission of evidence at trial regarding the events at Newport Music Hall and Subway, instead of limiting the evidence

to that involving the library interaction. Accordingly, Caldwell contends those admissions violated Crim.R. 3 by allowing the jury to consider non-essential facts that were not "made upon oath." (Caldwell's Brief. at 7.) The state counters the Complaint properly encompasses the Newport Music Hall and Subway encounters, and does so under oath.

{¶ 14} Crim.R. 3 states "[t]he complaint is a written statement of the essential facts constituting the offense charged. It shall also state the numerical designation of the applicable statute or ordinance. It shall be made upon oath before any person authorized by law to administer oaths." Hence, a plain reading of the rule requires complaints to contain essential facts, reference applicable statutes or ordinances and be sworn.

{¶ 15} "The purpose of a complaint filed in a criminal case is to provide reasonable notice to the defendant of the nature of the offense." *State v. Andrews*, 10th Dist. Franklin No. 98AP-1098, 1999 Ohio App. LEXIS 3552, *3 (Aug. 5, 1999), citing *State v. Sweeney*, 72 Ohio App.3d 404, 406 (10th Dist. 1991). "A complaint provides sufficient notice to the defendant by including the nature of the offense, the time and place of the alleged offense, the statutory language, the statute number, and a brief description of the conduct alleged, thus stating all of the essential elements of the offense." *Andrews* at *3, citing *Sweeney* at 406.

{¶ 16} Here, the complaint at issue details: (1) assault as the nature of the offense; (2) September 16, 2018 as the date of the offense; (3) the State of Ohio, County of Franklin and City of Columbus as the jurisdiction in which the offense occurred; (4) the statutory language at issue, that being "knowingly caus[ing] physical harm to another"; (5) City Code 2303.14(A) as the statute number; and (6) a brief description of the conduct alleged— Caldwell's "punching [S.S.] with a closed fist in the face at least three times." *See* Compl. All of this information appears above the officer's signature, which is sworn. We determine this

information provides Caldwell with "reasonable notice" of "the nature of the offense." *State v. Smith*, 10th Dist. No. 16AP-21, 2017-Ohio-9283, ¶ 21.

{¶ 17}  Caldwell proceeds to make a technical argument that because the bottom of the complaint identifies the "offense location" of the incident as the library's address at 1423 North High Street, Caldwell can only be charged with the assaults that transpired there. In other words, he maintains the complaint did not provide him with proper notice of the Newport Music Hall and Subway assaults being included because those addresses were not listed on the complaint. However, as the state correctly points out, only the information that appears above the signed oath is sworn. To that end, the complaint provides the "jurisdictional location" of the crime as Ohio/Franklin/Columbus. In addition, the Complaint states the events in focus took place in Franklin County / Columbus, Ohio. Both of those statements appear above the officer's sworn signature. The library's address, though, appears under the signature line and is therefore not sworn. Hence, because the officer swore to the location of the essential facts as occurring in Franklin County / Ohio, and the Newport Music Hall and Subway are both within that jurisdiction, the complaint provides Caldwell with sufficient notice of the nature of the offense under *Andrews* and *Smith* that the Newport Music Hall and Subway interactions were also at issue. *See* Tr. Vol. II at 391. The trial court did not violate Crim.R. 3, and this ground for reversal is deemed unpersuasive.

## B.  Crim.R. 31(A)

{¶ 18} In this part of the assignment, Caldwell reframes his above contention to raise a Civ.R. 31 argument. In particular, he claims the trial court's admission of evidence regarding the Newport Music Hall and Subway confrontations denied him of his right to a unanimous verdict under Crim.R. 31(A), as some jurors may have found him guilty of the

assault at Newport Music Hall or Subway instead of the library assault. He notes he objected to the admission of that evidence at trial. The state responds that this is an alternative means situation involving a single course of continuous conduct, which requires unanimity as to guilt only. Caldwell does not reply. After due deliberation, we find the state's contention to be more persuasive.

{¶ 19} Crim.R. 31(A) provides simply "[t]he verdict shall be unanimous. It shall be in writing, signed by all jurors concurring therein, and returned by the jury to the judge in open court." But, a jury " 'need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime.' " *State v. Marrero*, 10th Dist. No. 10AP-344, 2011-Ohio-1390, ¶ 97, quoting *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, ¶ 38, quoting *Richardson v. United States*, 526 U.S. 813, 817 (1999). The "critical inquiry, when determining whether a defendant was deprived of the Crim.R. 31(A) right to juror unanimity 'is whether the case involves 'alternative means' or 'multiple acts.' " *Marrero* at ¶ 97, quoting *Gardner* at ¶ 38.

{¶ 20} Alternative means cases involve situations "where a single offense may be committed in more than one way * * *." *Gardner* at ¶ 49. In those matters there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means." *Id.* Multiple acts cases, on the other hand, include scenarios where several acts are alleged and any one of them could constitute the crime charged. *Id.* at ¶ 50. In these cases,

> the jury must be unanimous as to which act or incident constitutes the crime. To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular

criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt.

*Id.* In sum, alternative means cases require unanimity only as to guilt but not as to means. In contrast, multiple act matters require unanimity as to guilt and as to means.

{¶ 21} The state urges us to find that Caldwell's actions toward S.S. at the library, Newport Music Hall and Subway constitute a single continuous course of conduct so as to qualify for the alternative means moniker. Under *Gardner*, if that label applies, juror unanimity is required as to guilt, but not as to the means by which the crime was committed. This finding, of course, would negate Caldwell's present contention in its entirety.

{¶ 22} In support of its alternative means argument, the state first directs us to *State v. Marrero*, 10th Dist. No. 10AP-344, 2011-Ohio-1390, ¶ 3. In that matter, we decided that a defendant's hitting and restraining a victim in a car, and then trying to drag her back into the car by her hair and neck after she escaped, constituted a single course of conduct that could not cogently be further "divided into two or more 'distinct conceptual groupings.' " *State v. Boyd*, 10th Dist. No. 14AP-961, 2015-Ohio-5116, ¶ 17, quoting *State v. Johnson*, 46 Ohio St.3d 96, 104 (1989) (overruled on other grounds by *State v. Jenks*, 61 Ohio St.3d 259, 282 (1991)), and citing *Marrero* at ¶ 96-101. Thus, we determined that the alternative means requirement applied so that unanimity was required only as to guilt. *Marrero* at ¶ 96-101.

{¶ 23} Additionally, the state relies on our holding in *Boyd* to buttress its contention that alternative means analysis is proper here. Therein, we rely on *Marrero* in part to hold a defendant's committing multiple criminal acts against a victim in more than a day constituted "a single, drawn-out continuum of violence." *Boyd* at ¶ 15, 16. Thus, we

determined that the case involved a single, continuous course of conduct so only unanimity as to guilt was required. *Boyd* at ¶ 15-17.

{¶ 24} In this case, the complaint charges Caldwell with assaulting S.S. in violation of Columbus City Code 2303.13(A), which provides "[n]o person shall knowingly cause or attempt to cause physical harm to another."

{¶ 25} At trial, the state introduced library security camera footage from the day in focus. The video depicts Caldwell's library confrontations with S.S. and Parrish. Regarding S.S., the video shows Caldwell shoving her to the ground. (State's Ex. B.) The audio of five 911 calls made during the confrontations was also admitted into evidence. Two were callers from inside the library; the remaining three were from individuals located near the library, Newport Music Hall, and Subway. Relevantly, Devon Henry, a resident of an apartment across the street from the library, called 911 during the library altercation and stated that an African-American man wearing jean shorts, black shoes, and no shirt was "hitting a woman" at the library. (State's Ex. A.) Notably, that is the same attire Caldwell is wearing in the security footage. Henry testified at trial. (Tr. Vol. II, 260-64.)

{¶ 26} In addition, Joe Williams called 911 from the Newport Music Hall to report an African-American man with no shirt and blue shorts "beating up on his wife." (State's Ex. A.) He said the woman, who was wearing a tank top and jeans, was trying to get away from the man, but he walked up and "started hitting on her." *Id.* His description of the woman's clothing matches the attire S.S. is wearing in the video.

{¶ 27} Rand Allison placed the third and final 911 call from Subway at S.S's request. *Id.* He told the emergency operator an African-American male in blue jean shorts and no shirt punched a white female in the face. *Id.* S.S. ran up to him "screaming someone call the cops." *Id.* at :41. He described S.S.'s face as "bleeding" and "pretty messed up." *Id.* at 1:30.

{¶ 28} All of those events took place within one hour and within one-half mile of the library. (Tr. at 261, 269, 390, 407, 428; *see also* State's Ex. A.)

{¶ 29} Under these facts, we find the state's reliance on *Boyd* and *Marrero* persuasive. Here, the record establishes Caldwell's assault of S.S. began at the library, continued at the Newport Music Hall, and concluded at the Subway. While the events in *Boyd* occurred in more than one day, the events in this case lasted one hour. Caldwell continued his assault against S.S. for a half-mile, with no sign of him trying to detour or discontinue harming S.S. That clearly establishes Caldwell's actions constituted a single course of conduct under the noted *authorities*. As such, pursuant to *Marrero* and *Boyd*, we hold that alternative means analysis is proper, and that unanimity is required only as to guilt.

{¶ 30} Having determined that the alternative means characterization is proper, we now must determine whether a "rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt." *Gardner*, 2008-Ohio-2787, ¶ 49-50. Based on our recitation of the evidence at trial, this is a simple question. The video and the three referenced 911 calls clearly establish Caldwell knowingly caused or attempted to cause physical harm to S.S. by pushing and punching her.

{¶ 31} In sum, we hold Caldwell engaged in a single, continuous course of conduct such that application of the alternative means descriptor is proper. Under that analysis, we hold the highlighted evidence is sufficient to support "all of the alternative means presented to the jury by which [Caldwell] might have been found to have committed" assault. *Boyd*, 2015-Ohio-5116, ¶ 22; *see also Gardner* at ¶ 50. The record reflects the jury unanimously found Caldwell guilty. (Tr. Vol. III at 588-590.) Accordingly, we find no violation of Crim.R. 31(A) present here and we overrule this portion of the assigned error.

### C. CRIM.R. 7

{¶ 32} Caldwell's final contention under this assignment of error is that "by allowing the State to introduce three separate acts of assault on S.S. at trial, the trial court constructively amended the complaint by changing the essential factual elements." (Caldwell's Brief. at 9.) Because we hold above that Caldwell's conduct equates to a single course of action, we necessarily overrule this ground for appeal as well.

{¶ 33} Assuming for purposes of argument that this contention remains viable after our decision *supra*, we would still reach the same result. This is so because although Caldwell cites to two cases, he fails to elaborate how those cases demand the result he seeks. It is "not appropriate for this court to construct the legal arguments in support of an appellant's appeal. If an argument exists that can support this assignment of error, it is not this court's duty to root it out." (Internal quotations and citation omitted.) *Roberts v. Hutton*, 152 Ohio App.3d 412, 2003-Ohio-1650, ¶ 18 (10th Dist.). Consequently, we determine Caldwell fails to sustain his burden of affirmatively demonstrating error as to this section of his appeal. *See State v. England*, 10th Dist. No. 05AP-793, 2006-Ohio-5087, ¶ 16. This ground for reversal is therefore also insufficient to grant the requested relief. In sum, we overrule Caldwell's first assignment of error in its entirety.

## IV. THE TRIAL COURT DID NOT DENY CALDWELL'S DUE PROCESS RIGHT TO A FAIR TRIAL

{¶ 34} Caldwell supports his second assignment of error by asserting the trial court's admission of "other acts" evidence equates to cumulative error establishing that his due process rights were violated. The state retorts the evidence in question was properly admitted, and even if its admission was improper, it was harmless error. We concur with the state.

{¶ 35} As noted, Caldwell takes issue with the trial court's admission of "other acts evidence." (Caldwell's Brief. at 11-14.) Evid.R. 404(B) provides:

> Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

"The admission of other acts-evidence under Evid.R. 404(B) 'lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice.' " *State v. Peterson*, 10th Dist. No. 12AP-646, 2013-Ohio-1807, ¶ 21. An abuse of discretion means more than an error of law or judgment. Rather, an abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 36} Caldwell utilizes the rule to argue the trial court improperly admitted two types of propensity evidence to his material prejudice. Caldwell first claims Wilkens' testimony depicting Caldwell's attempt to hit him was offered only to establish Caldwell's propensity to assault S.S. because Caldwell was not charged for that act. (Tr. Vol. II at 270-74.) Second, Caldwell asserts the admission of testimony regarding a previous altercation between him and S.S. was only to show "Caldwell to be a violent man." (Caldwell's Brief. at 13; *see also* Tr. Vol. II at 441-43.)

{¶ 37} "[A]n improper evidentiary admission under Evid.R. 404(B) may be deemed harmless error on review when, after the tainted evidence is removed, the remaining evidence is overwhelming." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶ 32. Pursuant to that guidance, we determine that the admission of the two noted categories of

evidence was harmless due to the overwhelming remaining evidence of Caldwell's guilt in the form of the video and Henry's testimony, each of which confirm Caldwell's assault on S.S. The trial court did not abuse its discretion in allowing the admission of such evidence. Hence, this ground for reversal does not equate to material prejudice and is therefore not persuasive.

{¶ 38} Caldwell also argues the admission of Williams' and Allison's 9-1-1 calls violated Evid.R. 404 as "other acts" evidence. (Caldwell's Brief. at 12-13.) We hold above, however, that those calls depict Caldwell's continuous course of conduct. As such, they cannot equate to "other acts." And, relatedly, we dismiss Caldwell's final contention under this assignment that the trial court erred by allowing the state to discuss those calls during closing. Again, those calls are part of Caldwell's continuous conduct. Additionally, closing arguments are not evidence.

{¶ 39} Caldwell's cumulative error argument likewise fails. (Caldwell's Brief. at 10.) "Pursuant to the doctrine of cumulative error, a judgment may be reversed where the cumulative effect of errors deprives a defendant of his constitutional rights, even though the errors individually do not rise to the level of prejudicial error." *State v. Ibrahim*, 10th Dist. No. 14AP-355, 2014-Ohio-5307, ¶ 36. Because not one of Caldwell's grounds in support of his due process assignment constitutes error, the cumulative effect doctrine is inapplicable here. *See State v. Teitelbaum*, 10th Dist. No. 14AP-310, 2016-Ohio-3524, ¶ 124-25 (holding multiple errors are required to establish cumulative error).

{¶ 40} For those reasons, we overrule the second assignment of error.

## V. THE STATE'S CLOSING ARGUMENT DID NOT PREJUDICE CALDWELL

{¶ 41} The third and final assignment of error charges the state engaged in misconduct in its closing by describing Caldwell's counsel's arguments as "poppycock" and

"legally inaccurate." (Tr. Vol. III at 561-69.) Caldwell also takes issue with the prosecutor calling him "an abuser" who "hunt[s] the victim." *Id.* at 567-49. The state counters that the comments did not substantially prejudice the defendant. We find the state's arguments carry more weight and we therefore overrule Caldwell's third assignment of error.

{¶ 42} We begin by noting that "[a] prosecutor is afforded a certain degree of latitude in his concluding remarks, may draw reasonable inferences from evidence at trial, and may comment on those inferences during closing argument." *State v. Hairston*, 10th Dist. Franklin No. 01AP-252, 2001 Ohio App. LEXIS 4399 * 12 (Sept. 28, 2001); *appeal not allowed, see also State v. Thomas*, 10th Dist. No. 02AP-778, 2003-Ohio-2199. With that in mind, "[t]he test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). Hence, "[a] defendant is entitled to a new trial only when a prosecutor makes improper remarks and those remarks substantially prejudice the defendant." *State v. Hunt*, 10th Dist. No. 12AP-1037, 2013-Ohio-5326, ¶ 18, citing *Smith*, 14 Ohio St.3d at 14.

{¶ 43} We consider the following factors when examining whether the alleged misconduct resulted in substantial prejudice to Caldwell: "(1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." *State v. Braxton*, 102 Ohio App.3d 28, 41 (8th Dist. 1995), *discretionary appeal not allowed*, 73 Ohio St. 3rd 1425, (1995). "[a] reversal for prosecutorial misconduct is not warranted unless it is clear beyond a reasonable doubt that the outcome of the trial would have been different but for the misconduct." (Citations omitted.) *State v. Tyler*, 10th Dist. No. 05AP-989, 2006-Ohio-6896, ¶ 20.

{¶ 44} For purposes of argument, we shall assume the comments were improper. Caldwell's counsel did object, and the trial court instructed the jury to disregard. Furthermore, the video, the 911 calls, and the testimonial evidence overwhelmingly established Caldwell's identity and guilt. Thus, even with the inappropriate comments, the jury still saw Caldwell attack S.S. with their own eyes via the video. The jury still heard five separate people call 911 about the attacks. Accordingly, because we find Caldwell suffered no prejudice as a result of the prosecutor's assumed improper conduct, and because it is clear beyond a reasonable doubt that the trial's outcome would not have been different but for the misconduct, we overrule this assignment of error under *Smith*, *Hunt*, *Braxton,* and *Tyler*.

## VI. CONCLUSION

{¶ 45} For the reasons above, we overrule Caldwell's three assignments of error. The judgment of the Franklin County Municipal Court is affirmed.

*Judgment affirmed.*

KLATT and SADLER, JJ., concur.

———————————