[Cite as *State v. Word*, 2019-Ohio-1733.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 17AP-367 |
| | | (C.P.C. No. 13CR-6229) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Jonte Word, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 7, 2019

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee. **Argued:** *Seth L. Gilbert.*

**On brief:** *Siewert & Gjostein Co., LPA,* and *Thomas A. Gjostein*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

PER CURIAM.

{¶ 1} Defendant-appellant, Jonte Word, appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of eight counts of kidnapping, two counts of aggravated robbery, five counts of felonious assault, two counts of rape, and one count of having a weapon while under disability. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} By indictment filed November 22, 2013, plaintiff-appellee, State of Ohio, charged Word with eight counts of kidnapping in violation of R.C. 2905.01, first-degree felonies; two counts of aggravated robbery in violation of R.C. 2911.01, first-degree felonies; five counts of felonious assault in violation of R.C. 2903.11, second-degree felonies; two

counts of rape in violation of R.C. 2907.02, first-degree felonies; and one count of having a weapon while under disability in violation of R.C. 2923.13, a third-degree felony. All of the charges except the having a weapon while under disability charge contained accompanying firearm specifications pursuant to R.C. 2941.145 and 2941.141. The indictment charged Word along with two codefendants, Obryan Duane Jones and Belynda Diane Coffman. Word entered a plea of not guilty.

{¶ 3} Initially, the indictment charged the offenses as having happened on or about July 15, 2013. However, on March 22, 2016, the state filed a motion to amend the indictment to reflect that the offenses occurred on or about July 4, 2013 to on or about July 14, 2013. That same day, the state filed a bill of particulars alleging the offenses occurred between approximately July 4 and July 14, 2013. At the start of trial on April 10, 2017, Word objected to the amendment of the indictment, arguing the change in date range prejudiced him because it hindered his ability to present an alibi defense. The trial court overruled Word's objection and allowed the amendment.

{¶ 4} At the jury trial, A.P. testified that one day in July 2013 she was at Jones' home in the Hilltop area getting high with her cousin and with Jones' cousin, Marnell. A.P. said that at some point her cousin, Nicole Adkins, took Jones' cell phone and left the house causing "chaos" to erupt since Jones is a drug dealer and relied on his cell phone to make sales. (Tr. Vol. 2 at 290.) When a man named Jerry Tipton arrived at the house to buy bath salts from Jones, Jones allowed A.P. to leave with Tipton on the condition that they find his cell phone and bring it back to the house. A.P. testified that she and Tipton eventually found Jones' cell phone at the home of Jasan Harmon, trading Tipton's bath salts to Adkins' boyfriend, Todd Elkins, in exchange for the phone.

{¶ 5} Once they had the phone, A.P. testified that Tipton and Harmon accompanied her to return the phone to Jones. Tipton testified that Marnell and two other men identified as Martin Hudson and "Tank" came out to the car, lifted their shirts to reveal guns in their waistbands, and told them that Jones wanted to speak with them inside. A.P. testified she went to the front door with Tipton and Harmon, knocked, and then they were "jerked" inside the house. (Tr. Vol. 2 at 296.)

{¶ 6} Inside the house, Jones, who had a gun, ordered A.P., Tipton, and Harmon to sit on the couch in the living room; he then began screaming, demanding to know what

happened to his phone.  Jones laid plastic sheeting on the floor, made Harmon lie down on the plastic, and then ran a circular saw near Harmon's face while demanding information about who took his phone.  Jones repeated the same act to Tipton.  Jones then ordered A.P., Tipton, and Harmon to go down to the basement.  At the bottom of the basement steps, Coffman, Jones' girlfriend, hit A.P. in the face.  Hudson and Tank were in the basement placing more plastic sheeting on the floor.  Jones took A.P., Tipton, and Harmon into a utility room where he blindfolded them and tied their hands.  Throughout these actions, Jones repeatedly stated "Wait till my brother gets here, it's over."  (Tr. Vol. 2 at 302.)

{¶ 7}    Word arrived while A.P., Tipton, and Harmon were tied up in the basement. Word is Jones' brother, and Coffman testified that Jones, Word, and Hudson all sold drugs together from that house.  Once Word was in the basement, someone removed A.P.'s blindfold and Word, who was holding a knife, took A.P. from the utility room into another room in the basement and ordered her to perform oral sex on Tank.  A.P. did as she was told, and she testified that Word was walking back and forth between that room and the utility room during this time.  A.P. testified that at one point she saw Word with a gun. Coffman testified that Word had a handgun and Jones and Hudson both had shotguns.

{¶ 8}    While A.P. was in the other room with Tank, Tipton was repeatedly punched and kicked while Jones demanded more information about the phone.  Although he was blindfolded, Tipton testified he believed it was Word who was punching and kicking him because Jones' voice remained constant and never sounded like he was physically exerting himself.

{¶ 9}    Harmon was tied to a chair and had his blindfold removed when Jones threatened to rip off his bottom jaw with a pair of pliers.  Jones punched Harmon with the pliers, causing Harmon to lose consciousness.  Harmon testified that when he awoke, Jones was pulling at his teeth with the pliers.  At that point, Harmon testified that everyone in the basement started beating him while he was in the chair.  Harmon said he was then blindfolded again and placed back on the floor next to Tipton.

{¶ 10} Jones then returned to using the circular saw, running it so close to Tipton's face that it got tangled in Tipton's blindfold and burned the skin under his eye.  Someone then fired a gun into the concrete causing debris to fall on Tipton and Harmon.  After the gunshot, Harmon testified he heard laughing.

{¶ 11} In the other room, A.P. heard the gunshot and she testified that Word commented to her that the situation "just got real now." (Tr. Vol. 2 at 311.) A.P. said Word then ordered her to perform oral sex on Tank again. A.P. testified she began performing oral sex again but that Tank then told her she could stop.

{¶ 12} After the gunshot, Tipton told Jones that Harmon got the phone from Elkins in order to try to trade it to Jones for bath salts. Someone removed Tipton's blindfold, and he told Jones and Word that Harmon had a new shotgun and a big stash of bath salts at his house. Tipton testified that Word then hit Harmon in the face with a novelty baseball bat.

{¶ 13} At that point, Jones called Harmon's girlfriend and instructed her to leave the shotgun and the stash of bath salts on her porch, and Word and Tipton then went to Harmon's house to retrieve the items. Tipton testified that Word had a gun with him during this trip. While Tipton and Word were gone, the beating of Harmon continued. Harmon testified that Coffman beat Harmon with his belt and then with an extension cord. Marnell also hit Harmon with the extension cord. Coffman ordered A.P. to shove a sock in Harmon's mouth to prevent him from screaming.

{¶ 14} Meanwhile, when Word and Tipton were driving back to Jones' house, Word told Tipton that he would let Tipton go as soon as they got back and that he was sorry Tipton "got caught up in the mixup and stuff." (Tr. Vol. 2 at 213.) When they got back to Jones' house, Jones released A.P. and allowed her to leave with Tipton. As they were walking to the car, A.P. said Word told her that Titpton just saved her life.

{¶ 15} Before releasing Harmon, Jones took $300 from Harmon's wallet, two packets of bath salts, and Harmon's identification. Jones also threatened to harm Harmon's children if he went to police. Someone then drove Harmon to his house. Neither A.P., Tipton, or Harmon reported the incident to police.

{¶ 16} Sometime in July or August 2013, police officers working in the Hilltop area noticed that Tipton appeared very "beat up." (Tr. Vol. 1 at 50.) Though Tipton was initially reluctant to talk to police, he eventually told the officers what had transpired at Jones' house. The officers then tracked down A.P. and spoke with her before referring the matter to detectives. Police later found Harmon by looking up his driver's license through the OHLEG system. Harmon had renewed his driver's license on July 15, 2013, which his girlfriend said was three or four days after the events at Jones' house.

{¶ 17} Word testified in his own defense, stating he is Jones' brother and that he lived with Jones for a few months in 2012. Word said he did not see Jones for the entire month of July 2013 because the two of them had an argument related to A.P. and Adkins staying at Jones' house. Additionally, Word denied any involvement in the events described by A.P., Tipton, Harmon, and Coffman. Word has prior convictions for drug possession and carrying a concealed weapon.

{¶ 18} At the conclusion of the trial, the jury returned guilty verdicts on all counts and specifications. After an April 19, 2017 sentencing hearing, the trial court denied Word's motion for judgment notwithstanding the verdict. Additionally, the trial court sentenced Word to an aggregate term of 50 years in prison. The trial court journalized Word's convictions and sentence in an April 20, 2017 judgment entry. Word timely appeals.

## II. Assignments of Error

{¶ 19} Word assigns the following errors for our review:

> [1.] The trial court violated the appellant's right to due process of law under Article I, Section 10 of the Ohio and the Sixth Amendment of the United States Constitution, in compelling him to stand trial on an indictment and bill of particulars which averred offenses having occurred over a broadly specified time, and, therefore, rendered trial counsel ineffective for inability to know what defense could have been raised.

> [2.] The trial court violated the appellant's right to a fair trial under the Sixth Amendment and due process under Fourteenth Amendment of the United States Constitution and Article I of the Ohio Constitution in committing substantial prejudice, by denying the appellant's request for the jury to be instructed according to Ohio Jury Instructions (OJI) on aider and abettor, wherein mere presence of the accused is not enough.

> [3.] Appellant's conviction was not supported by the sufficiency of the evidence in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and Article I, Sections 1 & 16 of the Ohio Constitution, and the conviction was also against the manifest weight of the evidence.

### III. First Assignment of Error – Indictment and Bill of Particulars

{¶ 20} In his first assignment of error, Word argues the trial court erred in granting the state's motion to amend the indictment to change the date range of the offenses.

#### A. Motion to Amend the Indictment

{¶ 21} In the original indictment, the state charged the offenses as having occurred on or about July 15, 2013. However, the state moved to amend the indictment prior to trial to reflect a date range of the offenses of on or about July 4, 2013 to on or about July 14, 2013. At the start of trial, before hearing any evidence, the trial court considered the state's motion to amend the indictment. The state indicated it sought the amendment because the victims were admitted drug abusers who had difficulty pinpointing the exact date of the incident, but the state was able to use BMV records and knowledge of fireworks celebrations marking the Fourth of July to narrow the date range. The trial court overruled Word's objection to the amendment to the indictment and granted the state's motion to amend.

{¶ 22} "Pursuant to Crim.R. 7(D), a court may, before, during or after a trial, amend an indictment due to any variance with the evidence, provided no change is made in the name or identity of the crime charged." *State v. V.J.*, 10th Dist. No. 13AP-799, 2014-Ohio-2618, ¶ 53. An appellate court reviews a trial court's decision to permit the amendment of an indictment for an abuse of discretion. *Id.*, citing *State v. Smith*, 10th Dist. No. 03AP-1157, 2004-Ohio-4786, ¶ 10. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Further, in order for the trial court's decision to allow the amendment of the indictment to constitute reversible error on appeal, the defendant must show that the amendment prejudiced his defense. *V.J.* at ¶ 53, citing *Smith* at ¶ 10.

{¶ 23} The Supreme Court of Ohio has held that, as a general matter, an indictment is not made invalid, nor is the trial affected, by the indictment stating the time of the offenses imperfectly. *State v. Sellards*, 17 Ohio St.3d 169, 171 (1985), citing R.C. 2941.08(C). More specifically, " '[i]n a criminal charge the exact date and time are immaterial unless in the nature of the offense exactness of time is essential. It is sufficient to prove the alleged offense at or about the time charged.' " *Id.,* quoting *Tesca v. State*, 108 Ohio St. 287 (1923), paragraph one of the syllabus. Precise times and dates are not ordinarily essential elements of offenses. *Sellards* at 171.

{¶ 24} Word asserts the trial court's decision to allow the amendment of the indictment prejudiced him because it prevented him from being able to present an alibi defense. However, Word made the same argument at the start of trial and the state noted for the court that while one of the prior defendants in the case had filed notice of an alibi, Word never filed or indicated that he wanted to file an alibi defense. At trial, to the extent Word attempted to assert an alibi defense, he testified that he did not see Jones for the entire month of July 2013. That testimony was not impacted by the indictment alleging offenses occurring on or about July 15, 2013 versus offenses occurring on or about the range of July 4 to July 14, 2013. *State v. Armengau*, 10th Dist. No. 14AP-679, 2017-Ohio-4452, ¶ 61 (no prejudice in allowing several amendments to the indictment where the appellant's defense "did not rely on alibis or impossibility for the open dates given in the indictment," and where the precise date and time the offense occurs is not an essential element of the crime), citing *State v. Reinhardt*, 10th Dist. No. 04AP-116, 2004-Ohio-6443, ¶ 20. Thus, Word does not show he suffered prejudice from the amendment to the indictment. Accordingly, the trial court did not abuse its discretion in granting the state's motion to amend the indictment.

**B. Ineffective Assistance of Counsel**

{¶ 25} Word also argues under this assignment of error that the trial court deprived him of his right to the effective assistance of counsel when it granted the state's motion to amend the indictment. In order to prevail on a claim of ineffective assistance of counsel, Word must satisfy a two-prong test. First, he must demonstrate that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This first prong requires Word to show that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* If Word can so demonstrate, he must then establish that he was prejudiced by the deficient performance. *Id.* To show prejudice, Word must establish there is a reasonable probability that, but for his counsel's errors, the result of the trial would have been different. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. *Id.* at 694.

{¶ 26} In considering claims of ineffective assistance of counsel, courts indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. Word contends his trial counsel was ineffective in not being able to prepare a defense because the trial court did not provide counsel with the specific date on which the offenses were alleged to have occurred. On appeal, Word argues his trial counsel was deficient in failing to request a continuance to explore alibi defenses based on the new date range.

{¶ 27} Under Crim.R. 7(D), "[i]f any amendment is made to the substance of the indictment, information, or complaint, * * * the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made." As noted above, Word denied any involvement in the offenses and testified he did not see Jones for the entire month of July 2013. Word does not explain how a continuance would have changed this testimony or how the lack of continuance prejudiced him in his defense. The state filed the motion to amend the indictment approximately 13 months before the start of trial, so Word cannot argue he did not have ample notice of the requested change or the opportunity to prepare accordingly. Thus, Word does not demonstrate a continuance under Crim.R. 7(D) would have been warranted had his trial counsel requested one, so trial counsel's failure to request a continuance will not substantiate a claim of ineffective assistance of counsel.

{¶ 28} Both because Word does not demonstrate that the trial court abused its discretion in granting the state's motion to amend the indictment and because Word does not demonstrate that he received the ineffective assistance of counsel, we overrule his first assignment of error.

## IV.  Second Assignment of Error – Jury Instruction

{¶ 29} In his second assignment of error, Word argues the trial court erred in instructing the jury on complicity.

{¶ 30} "A trial court is responsible for providing all jury instructions that are relevant and necessary for the jury to weigh the evidence and determine the facts." *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 59, citing *State v. Moody*, 10th Dist. No. 98AP-1371 (Mar. 13, 2001), citing *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus.  " 'A jury instruction is proper when it adequately informs the jury of

the law.' " *Jennings* at ¶ 59, quoting *Moody*. We review a trial court's refusal to give a requested jury instruction for an abuse of discretion. *State v. Kimkhe*, 10th Dist. No. 11AP-433, 2012-Ohio-1964, ¶ 12; *State v. Smith*, 10th Dist. No. 01AP-848 (Apr. 2, 2002), citing *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989).

{¶ 31} Word was charged both as a principal offender and under a complicity theory. "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus.

{¶ 32} At trial, in instructing the jury on complicity, the trial court stated:

> A common purpose among two or more people to commit a crime need not be shown by positive evidence, but may be inferred from circumstances surrounding the act and from the defendant's subsequent conduct. Criminal intent may be inferred from the presence, companionship, and conduct before and after the offense is committed. In addition, mere presence can be enough if it is intended to and does aid the primary offender.

(Tr. Vol. 4 at 882-83.) Word objected to the portion of the instruction referring to "mere presence," and asked that the jury instruction instead state "mere presence is not enough unless the State of Ohio has proven that the presence was aided to - - or was there to aid the principal offender." (Tr. Vol. 4 at 810.) The trial court overruled Word's objection on the grounds that the reference to "mere presence," when read in context of the whole sentence, properly conveys the law about when presence can prove criminal intent.

{¶ 33} This court has recently considered and rejected this same argument. In *State v. Williams*, 10th Dist. No. 15AP-48, 2016-Ohio-4550, we noted that the statement "mere presence can be enough if it is intended to and does aid" the primary offender is an accurate statement of the law that adequately informs the jury that more than mere presence is required to render one an aider and abettor. *Williams* at ¶ 77-81. *See also State v. McDonald-Glasco*, 10th Dist. No.17AP-368 2018-Ohio-1918, ¶ 31-34 (the instruction "mere presence can be enough if it is intended to and does aid the primary offender" is an accurate

statement of the law and adequately informs the jury on complicity).  Thus, as in *Williams*, we conclude that viewing the instruction as a whole, the trial court properly instructed the jury on complicity and the trial court did not abuse its discretion in denying Word's request for the additional language he sought related to "mere presence."

{¶ 34} We overrule Word's second assignment of error.

## V.  Third Assignment of Error – Sufficiency and Manifest Weight of the Evidence

{¶ 35} In his third and final assignment of error, Word argues sufficient evidence does not support his convictions and that his convictions are against the manifest weight of the evidence.

### A.  Sufficiency of the Evidence

{¶ 36} Whether there is legally sufficient evidence to sustain a verdict is a question of law.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  Sufficiency is a test of adequacy. *Id.*  The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt.  *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 37} Though Word captions his argument as a challenge to both the sufficiency and manifest weight of the evidence, his entire argument under this assignment of error relates to the credibility of the witnesses and the credibility of the physical evidence collected.  He asserts the witnesses lack credibility either because of their admitted drug use or their plea agreements with the state.  Further, he asserts the physical evidence lacks credibility because police did not search Jones' residence until four months after the alleged incident.  However, "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime." *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4. Thus, we address Word's argument regarding credibility of the evidence presented in our analysis of the manifest weight of the evidence.

### B.  Manifest Weight of the Evidence

{¶ 38} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *Thompkins* at 387.  "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).  Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.  Thus, the jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 39} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387.  Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 40} Word argues his convictions are against the manifest weight of the evidence because the witness' testimony was not credible.  First, Word argues that because all the victims in this case are admitted drug abusers, their testimony lacks credibility and thus cannot be used to support his convictions.  However, as noted above, witness credibility is within the province of the trier of fact.  Word states as fact that the victim's drug use renders their testimony unbelievable; however, A.P., Tipton, and Harmon all provided largely consistent testimony about the events occurring in Jones' house.  That testimony was also corroborated by Coffman.  The mere fact of their admitted drug use does not automatically

render the victim's testimony lacking credibility. Word provides no demonstrable reason to disbelieve their testimony on substantive grounds other than his argument that drug use inherently corresponds to a lack of credibility. *See State v. Howze*, 10th Dist. No. 13AP-386, 2013-Ohio-4800, ¶ 13-14 (witness's admitted drug abuse does not automatically render the testimony lacking in credibility).

{¶ 41} Word also argues Coffman's testimony lacked credibility because of her plea agreement with the state for her involvement in the same offenses. We again note, however, that it was within the province of the jury to believe Coffman's testimony in spite of her admitted involvement and subsequent plea agreement. *State v. Connally*, 10th Dist. No. 16AP-53, 2016-Ohio-7573, ¶ 41, citing *State v. Berry*, 10th Dist. No. 10AP-1187, 2011-Ohio-6452, ¶ 18 (noting the jury is in the best position to assess the credibility of a codefendant), citing *State v. Woodward*, 10th Dist. No. 03AP-398, 2004-Ohio-4418, ¶ 20. Coffman's testimony "was not so incredible as to render appellant's convictions against the manifest weight of the evidence." *Berry* at ¶ 18, citing *State v. Thompson*, 10th Dist. No. 07AP-491, 2008-Ohio-2017, ¶ 34.

{¶ 42} Finally, Word argues any physical evidence collected by police inherently lacked credibility because police did not search Jones' home until November 2013, four months after the alleged instances took place. Once again, however, it was for the jury to consider the delay in time and accord the physical evidence its requisite weight. Moreover, the testimony of the victims was enough to convict Word, and Word does not explain how the physical evidence impacted his convictions.

{¶ 43} Considering all of the evidence together, the jury did not clearly lose its way in concluding Word was an integral player in the events at Jones' house in July 2013. After an independent review of the record, we find sufficient evidence to support Word's convictions, and Word's convictions are not against the manifest weight of the evidence. We overrule Word's third and final assignment of error.

## VI. Disposition

{¶ 44} Based on the foregoing reasons, the trial court did not abuse its discretion in granting the state's motion to amend the indictment, Word did not receive the ineffective assistance of counsel, the trial court properly instructed the jury on complicity, and the sufficiency and manifest weight of the evidence support Word's convictions. Having

overruled Word's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN, LUPER SCHUSTER, and BRUNNER, JJ.