[Cite as *State v. Hill*, 2021-Ohio-132.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 19AP-711 |
| v. | : | (C.P.C. No. 18CR-5181) |
| Mark A. Hill, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on January 21, 2021

**On brief:** [*G. Gary Tyack*], Prosecuting Attorney, and *Kimberly M. Bond*, for appellee.

**On brief:** *Brian J. Rigg*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Mark A. Hill, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to a jury verdict finding him guilty of felonious assault, a second-degree felony, and a trial court verdict finding him guilty of a repeat-violent-offender specification on the felonious assault conviction. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} On October 18, 2018, appellant was indicted on one count of aggravated burglary, in violation of R.C. 2911.11, a first-degree felony, and one count of felonious assault, in violation of R.C. 2903.11, a second-degree felony. Each count included a repeat-

19AP-711

violent-offender ("RVO") specification pursuant to R.C. 2941.149(A).[1] The indictment alleged that each of the foregoing offenses occurred on or about August 25, 2018. Appellant entered a not guilty plea to the charges and requested a jury trial.

{¶ 3} On August 20, 2019, a jury trial commenced. At trial, the following evidence was adduced. In 2016, appellant Mark A. Hill began dating Brittany Hamm ("Ms. Hamm"), a woman who had been struggling with heroin addiction since 2013. (Aug. 20, 2019 Tr. Vol. I at 41, 57.) Ms. Hamm's grandmother, Rita Hamm ("Mrs. Hamm"), knew appellant through his association with Ms. Hamm and, for a brief period of time, Mrs. Hamm allowed appellant to live in her home. (Tr. Vol. I at 57, 59.)

{¶ 4} In August 2016, after appellant had moved out, Mrs. Hamm permitted Martie Jacobs ("Jacobs"), a long-time family friend and the victim in this case, to move into her home. (Tr. Vol. I at 35-37; Aug. 21, 2019 Vol. II at 7, 11.) Jacobs lived in the front bedroom of the home. (Tr. Vol. I at 40; Tr. Vol. II at 13-14.) Jacobs suffered from severe arthritis and degenerative disc disease stemming from a back injury he had sustained when he was younger. (Tr. Vol. II at 5, 9.) Due to his physical impairments, Jacobs had stopped working in 2011 or 2012. (Tr. Vol. II at 9.) At trial, Mrs. Hamm testified that Jacobs, then 53 years old, was frail due to his physical disabilities. (Tr. Vol. I at 51.) Mrs.Hamm and Jacobs both testified that Jacobs did odd jobs for Mrs. Hamm and he contributed to buying groceries by using his food stamps. (Tr. Vol. I at 38; Tr. Vol. II at 12.)

{¶ 5} Mrs. Hamm permitted Ms. Hamm to come to her home despite that Ms. Hamm would lie to her and had stolen her property. (Tr. Vol. I at 42-43.) On August 25, 2018, Ms. Hamm went to Mrs. Hamm's home to shower and get something to eat. (Tr. Vol. I at 44.) While Ms. Hamm was in the garage smoking a cigarette and talking on her phone, Mrs. Hamm heard her yell that Jacobs had hit her in the face. (Tr. Vol. I at 46.) Ms. Hamm was crying. *Id.* Neither Mrs. Hamm nor Ms. Hamm called the police, and Mrs. Hamm testified that Ms. Hamm did not have any noticeable injuries. (Tr. Vol. I at 46-47, 48, 52.)

{¶ 6} Earlier that afternoon, Jacobs had been at a neighbor's house drinking and watching pre-season football, and he testified that he had been drinking and was drunk.

---

[1] By law, an RVO specification is tried to the court. R.C. 2941.149(B).

(Tr. Vol. II at 21, 37-38.) Mrs. Hamm testified, however, that when he returned to the home, he was not slurring his words or otherwise out of control. (Tr. Vol. I at 86.) Both Mrs. Hamm and Jacobs testified that while Ms. Hamm was in the garage, Jacobs was outside on the front porch smoking a cigarette. (Tr. Vol. I at 46; Tr. Vol. II at 22.) Mrs. Hamm further testified that Jacobs denied hitting Ms. Hamm, and she did not see Jacobs hit her. (Tr. Vol. I at 47.)

{¶ 7} Jacobs testified that after he had finished his cigarette, he came inside, saw Ms. Hamm, who was in the kitchen, and confronted her about her behavior from two days earlier involving her bringing a man into the home. (Tr. Vol. II at 22-23.) He told her that if she did not stop this type of behavior, he was going to call the police. (Tr. Vol. II at 23.) In response, Ms. Hamm picked up a knife that had been laying on the table and threatened to kill or stab him. *Id.* Jacobs grabbed her hand, took the knife from her, "threw her into the living room on the floor," and "fell down on top of her." (Tr. Vol. II at 23-24.)

{¶ 8} Both Mrs. Hamm and Jacobs testified that at this point, Mrs. Hamm intervened in the altercation and pushed Jacobs off Ms. Hamm. (Tr. Vol. I at 49; Tr. Vol. II at 24.) Mrs. Hamm testified that although she did not see a knife during the altercation, she saw a knife on the living room floor. (Tr. Vol. I at 49-50.) It was a knife she kept in her kitchen. (Tr. Vol. I at 82-83; State's Ex. 22.) Jacobs testified the altercation between Ms. Hamm and himself took place in the early evening around 6:00 p.m. (Tr. Vol. II at 24.) Mrs. Hamm testified the altercation occurred around 9:00 p.m. (Tr. Vol. I at 52.) Both Mrs. Hamm and Jacobs testified that after the incident, Jacobs went to his room, shut his door, took his medications and went to bed. (Tr. Vol. I at 51; Tr. Vol. II at 24-25.)

{¶ 9} Mrs. Hamm testified that sometime between 10:30 and 11:00 p.m., appellant arrived at the residence. (Tr. Vol. I at 57, 60.) Appellant entered the home from the garage door leading into the kitchen and proceeded straight to Jacobs' bedroom. (Tr. Vol. I at 60-61.) Appellant had been in Jacobs' bedroom for five to seven minutes when Ms. Hamm came into the kitchen from the garage and entered Jacobs' bedroom. (Tr. Vol. I at 61-62.) A few minutes later, both appellant and Ms. Hamm exited Jacobs' bedroom and went out the front door of the home. (Tr. Vol. I at 62.) Mrs. Hamm did not hear anyone yelling while appellant and Ms. Hamm were in Jacobs' bedroom. *Id.*

19AP-711

{¶ 10} Jacobs testified he was in a light sleep when he heard his bedroom door open. (Tr. Vol. II at 26-27.) Turning to look over his shoulder, he saw appellant standing in his room. (Tr. Vol. II at 27.) Jacobs then saw appellant pull a sledgehammer from his pants. (Tr. Vol. II at 29.) Appellant hit Jacobs in the face near his left eye. (Tr. Vol. II at 29-30.) Jacobs fell to his knees on the floor, and appellant hit him again on the other side of his face. (Tr. Vol. II at 30.) After the assault, Jacobs passed out and went in and out of consciousness and did not fully wake up until one day or so later. (Tr. Vol. II at 30-31.)

{¶ 11} Mrs. Hamm testified that after appellant and Ms. Hamm had left the house, she saw Jacobs go into the bathroom and soon heard Jacobs yelling for her. (Tr. Vol. I at 65.) She found him lying in a fetal position in the bathroom, with blood all over his face and arms and blood spatter on his pants. (Tr. Vol. I at 65-66.) She also saw blood in the bathroom, in the hallway, and in Jacob's bedroom on the runner carpet. (Tr. Vol. I at 67.) Mrs. Hamm further testified the runner was covered in blood and that she put it in the trash can. (Tr. Vol. I at 68.) She called 911 and Jacobs was transported to the hospital. (Tr. Vol. I at 66.)

{¶ 12} At the hospital, Jacobs underwent a 12-hour surgery to reconstruct one eye socket and his jaw. (Tr. Vol. II at 32.) He had to undergo rehabilitation to learn to walk and swallow again, and he still had problems walking which he might never recover from. (Tr. Vol. II at 33.) Jacobs also had to undergo 4 follow-up surgeries to address problems with his tear ducts and pain from one of the steel plates used in the reconstruction surgery. (Tr. Vol. II at 34.) He also had to see an eye specialist and a plastic surgeon. *Id.* As a result of the assault, a portion of the left side of Jacobs' face is permanently concave. (Tr. Vol. II at 35.)

{¶ 13} Appellant testified at trial. According to appellant, at about 10:00 p.m. on August 25, 2018, Ms. Hamm called him to ask him to pick her up at Mrs. Hamm's home. (Tr. Vol. II at 90.) While he was driving to the residence, Ms. Hamm contacted him again via a video call. (Tr. Vol. II at 91-92.) Ms. Hamm was crying and hysterical and she told appellant that Jacobs had punched her in the eye. (Tr. Vol. II at 92.) Appellant testified he "could tell where she had been punched." *Id.*

{¶ 14} According to appellant, when he arrived at the residence, Ms. Hamm was in the garage smoking a cigarette and still crying. (Tr. Vol. II at 93.) After speaking with

Ms. Hamm about what had happened, he decided to go inside and talk to Jacobs, telling Ms. Hamm, "[c]ome on, let's go talk to him." (Tr. Vol. II at 94.) Ms. Hamm told appellant Jacobs was in the bedroom, and they both walked to the bedroom. (Tr. Vol. II at 95.) Appellant knocked once on the bedroom door and entered the room. *Id.* Appellant testified that he wanted to let Jacobs know "to keep his damn hands off my girl" and asked him why Jacobs had put his hands on her. *Id.*

{¶ 15} In contrast to Jacobs' testimony describing the assault, appellant testified that it was Jacobs who first took a swing at appellant, but appellant dodged the blow. (Tr. Vol. II at 95-96.) Appellant testified that he was shocked by Jacobs' actions and "wasn't expecting to get into no physical confrontation with him, you know." (Tr. Vol. II at 95.) Appellant further testified that in response, he hit Jacobs about four times using only his fist and that Jacobs fell back on the bed. (Tr. Vol. II at 96.) Appellant denied having a sledgehammer or any other kind of hammer with him during the incident. (Tr. Vol. II at 90-91.) He further testified that he did not see any blood or pay any attention to Jacobs' face. (Tr. Vol. II at 96-97.) After reiterating his warning to "[k]eep your fucking hands off my girl," appellant and Ms. Hamm left. (Tr. Vol. II at 97.) Later that night, appellant took photographs of Ms. Hamm's black eye using his phone. (Tr. Vol. II at 98.)

{¶ 16} When Columbus Police subsequently investigated the incident, appellant waived his *Miranda* rights and voluntarily spoke with Detective Kathy Zimmer. (Tr. Vol. I at 119-20.) Appellant showed the police the photographs of Ms. Hamm's face he had taken, copies of which were admitted into evidence at trial. (Tr. Vol. I at 121; Tr. Vol. II at 98; Def. Exs. A1-A5.) Appellant also showed the police text messages between himself and Ms. Hamm. (Tr. Vol. II at 98.)

{¶ 17} At the close of the state's case, outside of the presence of the jury, defense counsel moved for acquittal pursuant to Crim.R. 29. (Tr. Vol. II at 138.) After listening to arguments from defense counsel and the prosecutor, the trial court denied the motion. (Tr. Vol. II at 138-39.) Subsequently, at the close of the defense's case, and again outside of the presence of the jury, defense counsel renewed his motion for acquittal based on Crim.R. 29. (Tr. Vol. II at 149.) The trial court again denied the motion. *Id.*

{¶ 18} At the conclusion of the trial, the jury returned a verdict acquitting appellant of aggravated burglary and finding him guilty of felonious assault, a second-degree felony.

19AP-711

The court convicted appellant for the RVO specification on the felonious assault charge. On September 20, 2019, the trial court issued a judgment entry which reflected the verdicts of the jury and the court and imposed an aggregate 12-year term of incarceration.

{¶ 19} This timely appeal followed.

## II. Assignments of Error

{¶ 20} Appellant asserts the following three assignments of error for our review:

> [I.] The trial court erred when it denied Defendant-Appellant's R.29 motion for acquittal.
>
> [II.] The verdict of felonious assault was against the manifest weight of the evidence.
>
> [III.] The trial court abused its discretion in allowing the state to present evidence of other acts/crimes/convictions.

## III. Discussion

### A. First and Second Assignments of Error – Motion for Acquittal (Sufficiency of the Evidence) and Manifest Weight of the Evidence

{¶ 21} Appellant's first two assignments of error are interrelated, and we address them together. In his first assignment of error, appellant argues that the trial court erred when it denied his motion for acquittal. In his second assignment of error, appellant argues that the verdict of felonious assault[2] was against the manifest weight of the evidence. We find no merit in either of appellant's contentions.

{¶ 22} Crim.R. 29(A) provides, in relevant part, "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A). "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether a conviction is supported by legally sufficient evidence is a question of law. *State v. Flood*, 10th Dist. No. 18AP-206, 2019-Ohio-2524, ¶ 16, citing *Thompkins*, at 386.

---

[2] Appellant does not challenge his conviction for the RVO specification.

19AP-711

{¶ 23}   In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds* as stated in *State v. Smith*, 80 Ohio St.3d 89 (1997). In conducting a review of the sufficiency of the evidence, " 'an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime.' " *Flood*, at ¶ 16, quoting *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4, citing *State v. Woodward*, 10th Dist. No. 03AP-398, 2004-Ohio-4418, ¶ 16.

{¶ 24}   In contrast, "[w]hile sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Cassell*, at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25, citing *Thompkins*, at 386.  "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).  This discretionary authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175.

{¶ 25}   Furthermore, " '[w]hile the jury may take note of inconsistencies and resolve or discount them accordingly, * * * such inconsistences do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Gullick*, 10th Dist. No. 13AP-317, 2014-Ohio-1642, ¶ 10, quoting *State v. Nivens*, 10th Dist. No. 95APA09-1236 (May 28, 1996).  "A jury, as the finder of fact and the sole judge of the weight

of the evidence and the credibility of the witnesses, may believe or disbelieve all, part, or none of a witness's testimony." *Id.*, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 26} A conviction is not against the manifest weight of the evidence simply because the jury believed the state's version of events over the appellant's version. *Gullick* at ¶ 11, citing *State v. Houston*, 10th Dist. No. 04AP-875, 2005-Ohio-449, ¶ 38 (reversed and remanded in part on other grounds). Rather, a reviewing court must give great deference to the jury's determination of witness credibility. *Id.*, citing *State v. Chandler*, 10th Dist. No. 05AP-415, 2006-Ohio-2070, ¶ 19. This is so because the jury " ' "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." ' " *State v. Huber*, 10th Dist. No. 18AP-668, 2019-Ohio-1862, ¶ 32, quoting *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 27} Appellant was convicted on one count of felonious assault, in violation of R.C. 2903.11. R.C. 2903.11 defines felonious assault and provides, in relevant part:

> (A) No person shall knowingly do either of the following:
>
> (1) Cause serious physical harm to another or to another's unborn;
>
> (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

R.C. 2903.11(A)(1) and (2). In turn, "serious physical harm" is defined as:

> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> (b) Any physical harm that carries a substantial risk of death;
>
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

19AP-711

> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

{¶ 28} In his challenge to the sufficiency of the evidence, appellant argues that the state failed to meet its burden of proving that appellant caused the injuries suffered by Jacobs as required by R.C. 2903.11. Specifically, appellant asserts that the evidence showed that Jacobs' injuries were caused not by appellant, but by a fall in the bathroom. Notably, and as pointed out by the state, appellant did not claim at trial that Jacobs was injured by a fall in the bathroom. This is understandable because such a theory would have been entirely inconsistent with appellant's claim of self-defense. *See State v. Hubbard*, 10th Dist. No. 11 AP-945, 2013-Ohio-2735, ¶ 59; *State v. Norman*, 10th Dist. No. 99AP-398 (Dec. 23, 1999), citing *State v. Champion*, 109 Ohio St 281, 286-87 (1924).

{¶ 29} Appellant also challenges the testimony of Jacobs as being unreliable due to Jacobs' admitted intoxication. But the mere fact that Jacobs had been drinking or was intoxicated does not automatically negate his testimony. *See State v. Word*, 10th Dist. No. 17AP-367, 2019-Ohio-1733, ¶ 40. Furthermore, appellant's challenge to the credibility of Jacobs' testimony goes to the weight of the evidence, not the sufficiency of the evidence. (Citations omitted.) *State v. Cervantes*, 10th Dist. No. 18AP-505, 2019-Ohio-1373, ¶ 33 "[I]n a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime." *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4.

{¶ 30} The evidence presented by the state included Jacobs' testimony that appellant hit him in his face near his left eye with a sledgehammer, that he fell to the ground, and that appellant hit him in the face on the other side with the sledgehammer[3] while Jacobs was still on the ground. (Tr. Vol. II at 29-30.) Jacobs also testified regarding his extensive injuries and multiple surgeries, as well as the fact that the left side of his face is permanently concave. (Tr. Vol. II at 32-35.) Jacobs' medical records, including an x-ray,

---

[3] A sledgehammer is a deadly weapon. See R.C. 2923.11.

also demonstrated significant trauma and damage to his skull.  (Tr. Vol. II at 63-64; State's Ex. 32.)

{¶ 31} Additionally, Mrs. Hamm testified that she saw blood in Jacobs' bedroom and there was a trail of blood leading into bathroom.  (Tr. Vol. I at 67-68, 79.)  Mrs. Hamm specifically testified that there was a lot of blood in the bedroom, and that it was all over the carpet runner kept in the front of Jacobs' bedroom.  (Tr. Vol. I at 67, 99.)  Mrs. Hamm also testified that she disposed of the runner in the trash because "it was pretty heavy with blood."  (Tr. Vol. I at 96, 99.)

{¶ 32} The foregoing evidence, particularly in light of appellant's admission that he repeatedly hit Jacobs in the face in Jacobs' bedroom, is entirely consistent with a jury finding that Jacobs' injuries were caused by appellant and not by a fall in the bathroom. Construing the evidence in favor of the state, we conclude it was sufficient to allow the jury to infer that appellant knowingly caused physical harm to Jacobs and/or that appellant knowingly caused or attempted to cause serious physical harm to Jacobs by means of a deadly weapon as required by R.C. 2903.11(A)(1) and (2).  Therefore, the trial court properly overruled appellant's motion for acquittal made pursuant to Crim.R. 29.

{¶ 33} The manifest weight of the evidence also supports appellant's conviction for felonious assault.  Although appellant argues that his testimony concerning his claim of self-defense was more believable than the testimony of the state's witnesses, the evidence provided the jurors with myriad reasons to find appellant's testimony less than credible. First, appellant was the only person who testified that Jacobs swung at him first; there was no corroborating testimony on this point.  In contrast, Jacobs was unwavering in his testimony that appellant was the aggressor in the incident.  In addition, given the testimony by both Mrs. Hamm and Jacobs set forth previously concerning Jacobs' physical disabilities and impairment due to his drinking on the date of the incident, the jury could easily have decided appellant's claim of self-defense was incredible for those reasons alone.

{¶ 34} Furthermore, appellant's claim that he only used his fist to hit Jacobs was easily belied by Jacobs' testimony concerning the extent of Jacobs' injuries and surgeries, the fact that the jury could plainly see the permanent disfigurement to Jacobs' face, and the medical records of Jacobs admitted into evidence.  Simply put, the jury was not obligated to accept appellant's testimony as truthful, and instead was entirely free to resolve the

19AP-711

inconsistent testimony concerning the details of the assault in favor of believing the victim. *State v. Kurtz*, 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 31, citing *State v. Jackson*, 06AP-1267, 2008-Ohio-1277, ¶ 11.

{¶ 35} As set forth above, under a manifest weight of the evidence analysis, although we are able to consider the credibility of the witnesses in conducting our review, " we are guided by the presumption that the jury * * * ' is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Cattledge*, at ¶ 6, quoting *Seasons Coal* at 80. In engaging in the limited weighing of the evidence which we are permitted, we cannot say the jury clearly lost its way when it rejected appellant's claim of self-defense and found appellant guilty of felonious assault beyond a reasonable doubt. Accordingly, we find that the manifest weight of the evidence supports appellant's conviction.

{¶ 36} In sum, appellant has failed to demonstrate that the evidence was insufficient or that the jury clearly lost its way and created such a manifest miscarriage of justice that his conviction on the felonious assault count must be reversed and a new trial ordered. Because appellant's conviction was supported by sufficient evidence and was not against the manifest weight of the evidence, his first and second assignments of error are overruled.

## B. Third Assignment of Error – Evidence of Prior Acts/Crimes/Convictions

{¶ 37} In his third assignment of error, appellant argues that the trial court abused its discretion in allowing the state to present evidence of his prior conviction of felonious assault. We do not agree.

{¶ 38} In general, "the admission or exclusion of evidence lies in the sound discretion of the trial court." *State v. Walker*, 10th Dist. No. 17AP-588, 2019-Ohio-1458, ¶ 42, citing *State v. Darazim*, 10th Dist. No. 14AP-203, 2014-Ohio-5304, ¶ 33, citing *State v. Bartolomeo*, 10th Dist. No. 08AP-969, 2009-Ohio-3086, ¶ 24. Because a trial court has broad discretion over the admission or exclusion of evidence, a reviewing court " 'will not reverse an evidentiary ruling absent an abuse of discretion that materially prejudices the affected party.' " *Id.* at ¶ 48, quoting *State v. Hughes*, 10th Dist. No. 14AP-360, 2015-Ohio-151, ¶ 41, quoting *Darazim* at ¶ 16. An abuse of discretion implies that the court's attitude

19AP-711

was unreasonable, arbitrary, or unconscionable. *Id.* at ¶ 42, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ **39**} In this case, appellant testified at trial. (Tr. Vol. II at 84-146.) "When an accused testifies at trial, Evid.R. 609(A)(2) allows the state to impeach the accused's credibility with evidence that the accused was convicted of an offense punishable by imprisonment in excess of one year and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, ¶ 132. "Generally, a prosecutor can cross-examine as to ' "the name of the crime, the time and place of conviction, and sometimes the punishment." ' " *Id.*, quoting 1 Giannelli & Snyder, Evidence, Section 609.15, at 473, (2d Ed.2001), quoting 1 McCormick (5th Ed. 1999), Section 42, at 167. "However, ' "details such as the victim's name and the aggravating circumstances" ' are not permissible." *Id.*, quoting 1 Giannelli & Snyder, Evidence Section 609.15, at 473, (2d Ed.2001), quoting 1 McCormick (5th Ed.1999), Section 42, at 167.

{¶ **40**} Pursuant to Evid.R. 609(A)(2), evidence of appellant's prior conviction for felonious assault was introduced by the state for the purpose of impeaching appellant's credibility. The state also introduced this evidence pursuant to Evid.R. 404(B), specifically for the purpose of impeaching his credibility based on a statement appellant made to the detective investigating the incident in this case that appellant never used weapons or work-related tools when engaged in a fight. (Tr. Vol. II at 136.) Contrary to the statement appellant made to the detective, the prior conviction involved the use of a razor-blade knife by appellant during a bar fight. (Tr. Vol II at 107.) At trial, appellant admitted both that he used the razor-blade knife during the fight and that it was one of his work tools. *Id.* Appellant asserted at trial and reasserts in his appeal that the evidence of this prior conviction should have been excluded under either Evid.R. 403 or 404(B), Evid.R. 609(A)(2) notwithstanding.

{¶ **41**} We have previously stated when a defendant's version of events is contradicted by other witnesses, the defendant's credibility is at issue. *State v. D.H.*, 10th Dist. No. 16AP-501, 2018-Ohio-559, ¶ 72. Under such circumstances, it is appropriate for the state to impeach the defendant's credibility by introducing testimony regarding prior convictions of the defendant. *Id.*, citing *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-

5059, ¶ 27. Evidence of prior convictions may be introduced under Evid.R. 609(A)(2) even if the prior conviction did not include an element of truthfulness. *Brown* at ¶ 27.

{¶ **42**} Here, as discussed previously, appellant asserted he acted in self-defense and he testified to that. He further testified that he used only his fist to strike Jacobs, in contrast to Jacobs' testimony that appellant hit him with a sledgehammer. Appellant's version of the events was contradicted by both Jacobs' testimony and some of Mrs. Hamm's testimony. Therefore, appellant's credibility was directly at issue and it was entirely appropriate for the state to use evidence of appellant's prior conviction for purposes of impeachment.

{¶ **43**} Furthermore, as required by Evid.R. 609(A)(2), the trial court specifically determined that, under Evid.R. 403, the probative value of the evidence of appellant's prior conviction outweighed the danger of unfair prejudice to him in admitting the evidence. (Tr. Vol. II at 106.) Evid.R. 403(A) provides that "although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Importantly, it is the word "unfair" which must be emphasized. *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, ¶ 24, citing *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172, (2001). This is so because " '[i]f unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403.' " *Id.* " 'Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision.' " *Id.*, quoting *Oberlin* at 172. Evidence may be unfairly prejudicial if it " 'arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish.' " *Id.*, quoting *Oberlin* at 172. Though it is not always, evidence is often unfairly prejudicial if it appeals to the jury's emotions rather than the jury's intellect. *Id.* Fairness is subjective; thus the determination whether evidence is unfairly prejudicial is left to the sound discretion of the trial court. *Crotts* at ¶ 25, citing *State v. Robb*, 88 Ohio St.3d 59, 68 (2000).

{¶ **44**} We find no abuse of discretion in the trial court's assessment that the probative value of the evidence of appellant's prior conviction outweighed the danger of unfair prejudice to him in admitting the evidence. While the evidence was certainly unfavorable to appellant, we do not find its admission into evidence prejudiced appellant

19AP-711

unfairly so as to warrant its exclusion. Therefore, we find it was not error to admit the evidence under Evid.R. 609(A)(2).

{¶ 45} Likewise, it was not error to admit it under Evid.R. 404(B). Evid.R. 404(B) provides "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence of other crimes, wrongs, or acts may be properly admitted so long as it is being used for any proper purpose other than proving the defendant's propensity to act in conformity with a particular trait of his character. *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, ¶ 109; *State v. Fowler*, 10th Dist. No. 15AP-1111, 2017-Ohio-438, ¶ 21.

{¶ 46} Here, as argued by the state both in the trial court and now, the record supports a finding that it was introducing the evidence of the prior conviction to impeach appellant's credibility, not to show appellant's propensity to commit similar crimes. (Tr. Vol. II at 136.) In addition, as the trial court aptly observed, there were other reasons supporting the state's admission of this evidence under Evid.R. 404(B), such as demonstrating knowledge or absence of mistake. (Tr. Vol. II at 137.) We find the trial court's reasoning to be sound.

{¶ 47} Furthermore, appellant's argument that the evidence of his prior conviction was introduced as improper propensity evidence and resulted in tainting the jury is undermined by the trial court's instruction to the jury they may only consider evidence of any witness's prior convictions "to the extent they bear on the witness's believability or credibility as a witness in this trial." (Tr. Vol. II at 194.) The jury is presumed to have followed the trial court's instruction. *State v. Brown*, 10th Dist. No. 15AP-935, 2016-Ohio-7944, ¶ 18, citing *State v. Walburg*, 10th Dist. No. 10AP-1087, 2011-Ohio-4762, ¶ 53, citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 39. In light of the instruction given, we find the trial court did not abuse its discretion in allowing the evidence of appellant's prior conviction.

{¶ 48} Moreover, even if the trial court erred in admitting the evidence of appellant's prior conviction, we find any such error to be harmless. As we have previously observed, "an improper evidentiary admission under Evid.R. 404(B) may be deemed harmless error

19AP-711

on review when, after the tainted evidence is removed, the remaining evidence is overwhelming." *State v. Caldwell*, 10th Dist. No. 18AP-814, 2019-Ohio-3015, ¶ 37, quoting *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶ 32. As discussed above in addressing appellant's first and second assignments of error, in this case the evidence of appellant's guilt was overwhelming. Therefore, any error on the part of the trial court in admitting the challenged evidence was harmless.

{¶ 49} In sum, we find the trial court did not err when it permitted the state to introduce evidence of appellant's prior conviction of felonious assault for purposes of impeaching the credibility of appellant, and that even if there was any error, it was harmless. Accordingly, appellant's third assignment of error is overruled.

## IV. Disposition

{¶ 50} Having overruled appellant's first, second, and third assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN, PJ. and SADLER, J., concur.